THE PEOPLE ex rel. FLAVIUS J. ALLEN, Respondent, *v.* C. J.
BADGLEY et al., as Assessors, etc., Appellants.

Before a taxpayer whose property has not been assessed for more than its
value, can be said to be aggrieved, and so entitled to a review of his
assessment under the act of 1880 (Chap. 269, Laws of 1880), he must
establish that his property is assessed at a higher proportionate rate than
property generally in the town; proof that some property is assessed at
a lower rate of valuation is not sufficient, if upon the whole the average
rate of assessment is no lower.

(Argued April 24, 1893; decided May 5, 1893.)

APPEAL from judgment of the General Term of the Supreme
Court in the second judicial department, entered upon an order
made February 18, 1893, which affirmed an order of Special
Term, granting a writ of certiorari to review the action of the
assessors of the town of Poughkeepsie in the county of
Dutchess and reducing an assessment made by them upon
property of the relator.

The facts, so far as material, are stated in the opinion.

*W. Farrington* for appellant. If the assessed valuation of
relator's property is not a greater percentage of its actual
value than the average of the other real estate in the town, he
is not injured, and will not be required to pay more than his
just share of the tax to be levied upon the assessment, even
though some pieces of real property in the town may be
assessed at a much lower percentage than his. (Laws of 1880,
chap. 269; *People ex rel. v. Carter*, 109 N. Y. 576.)

*William R. Woodin* for respondent. In determining the
value of real estate for the purpose of taxation, the cost of its
creating may be considered, yet the controlling consideration
is its earning capacity. (34 Hun, 321; 36 id. 592; *People
ex rel. v. Carter*, 109 N. Y. 576.)

EARL, J. Chapter 269 of the Laws of 1880 authorizes an
aggrieved taxpayer to procure the review by certiorari of the
assessment of his property, on the ground that it is illegal, or

erroneous by reason of overvaluation, or is unequal in that it has been made at a higher proportionate valuation than other property on the same assessment roll. The relator under that act, claiming that his real estate in the town of Poughkeepsie, was, in the year 1892, assessed at a higher rate than other real estate in the town, procured a writ of certiorari for the purpose of correcting the assessment. The assessors made a return to the writ, denying that the assessment was at a higher rate than that of other real property in the town, and alleging that it was at a fair, just and equal rate, and no higher in proportion to its value than other property on the assessment roll. The judge, at Special Term, referred the matter to a referee to take the evidence. The real estate in question, consisting of eight acres of land and the improvements thereon, was assessed at $6,000. Upon the hearing before the referee, the only witness for the relator, as to the valuation of his property, was the relator himself. He testified that he purchased the property in September, 1890, for $2,000; that he subsequently built a new house upon it which cost him at least $5,000; that he built a new barn and stable, the cost of which he could not specify; that he paid for laying a stone wall around the lot, $308; that he built a fence around the lot, and that he paid $1,500 for cleaning up and grading the land. It thus appears that the land and the improvements thereon cost him in the neighborhood of $9,000, besides the items of cost which he could not specify. After giving this evidence, he put in evidence the entire assessment roll of the town, and then rested his case; and he gave no other evidence.

It is obvious that no one looking at the assessment roll alone could legally or judicially ascertain that the assessments were unequal, unfair or unjust. The assessment roll standing by itself furnishes no evidence whatever upon the issue joined between these parties. The only evidence furnished by the relator was that he was assessed at $6,000, and that his property with the improvements had cost him more than $9,000; and upon that evidence certainly it could not be determined that the assessment of his property was excessive or unequal.

The assessors could have rested their case upon the evidence given by the relator, and it would have been the duty of the court upon that evidence to have found against him, and dis. missed the writ. The burden was upon him to show that the assessment was too high, and he utterly failed to sustain that burden.

But the assessors did not leave the case there. They called several witnesses who gave evidence as follows : Mr. Burgess, who appeared to be an experienced contractor and builder, testified that the building of such a dwelling house as the relator erected upon his lot would cost $6,000, and that the barn and other outbuildings erected by him would cost $1,300 ; that the picket fence would cost $1,000, and the stone wall $700. If to these figures we add the cost of grading, $1,500, as testified to by the relator, and the cost of the land, $2,000, we have the total cost of the relator's property at $12,500. W. H. Lawson testified that Webster Wright's farm, adjoining the relator's property, consisting of 102 acres, was worth $9,000, and it was assessed at only $4,500, fifty per cent of the value. He estimated the relator's property to be worth $10,000, and upon his estimate it was assessed at sixty per cent of its value. Charles Wicks testified that the relator's property was worth $13,000, thus showing that it was assessed at forty-six per cent of its value. He also testified to the value of four other pieces of property, and his evidence showed that they were assessed at an average of sixty per cent of their value. Henry Allen testified that the relator's property was worth $9,000, and according to his evidence it was assessed at 66⅔ per cent of its value. He testified to the values of eighteen other pieces of property, and it appears that they were assessed at 77½ per cent of their value. Casper Lawson testified that the relator's property was worth $10,000, and thus showed that it was assessed at sixty per cent of its value. He also testified to the values of two other pieces of property, showing that they were assessed at 81 per cent of their value. The relator gave no evidence whatever in rebuttal of this evidence, and it thus appears that the relator's

property was assessed at a lower proportionate value than many other pieces of property in the town. It is utterly impossible to say from all the evidence that his property was assessed at a higher proportionate value than other property generally in the town. It is probably true that other pieces of property could be found in the town which were assessed at a lower rate of valuation than his. But as we held in *People ex rel. Warren* v. *Carter* (109 N. Y. 576), that is not sufficient to enable him to procure a reduction of his assessment. It always happens upon every assessment roll that some pieces of property are assessed at a higher rate of valuation than others, and out of proportion to other property. But before a taxpayer, whose property is not assessed for more than its value, can be said to be aggrieved and claim a reduction of his assessment, he must establish that his property is assessed at a higher proportionate rate than property generally in the town. Some property may be assessed at a higher rate than his, and some at a lower rate; but if upon the whole the average rate of assessment is no lower than his, and if his assessment is not at a higher rate than assessments generally, he is not aggrieved within the meaning of the statute, and cannot claim in such a proceeding as this to have his assessment reduced. In this record there is not an atom of proof authorizing a reduction of the relator's assessment, and the orders of the General and Special Terms should be reversed and the writ of certiorari dismissed, with costs to the appellants in all the courts.

All concur.

Ordered accordingly.