PEOPLE ex rel. SUTPHEN v. FEITNER et al.

(Supreme Court, Appellate Division, First Department. December 8, 1899.)

1. TAXATION—ASSESSMENT—CERTIORARI.

    Where no more is disclosed on the review of an assessment by certiorari than relator's mere claim to inequality and overvaluation in the appraisement sworn by the assessor to be fair, and the facts on which the claim of inequality is based do not appear, the assessment will not be disturbed.

2. SAME.

    Where a taxpayer applies for the correction of an assessment, under Greater New York Charter, § 895, requiring him to state to the commissioners the grounds of his objection in writing, he must not only make a formal complaint of the assessment, but he must substantiate it with averments or evidence showing that it has some support, and state the facts to the commissioners, or he cannot require the court, on certiorari, to allow an original inquiry, under Laws 1896, c. 908, § 253, authorizing it to take evidence where testimony appears necessary to the proper disposition of the matter.

    Barrett, J., dissenting.

Appeal from special term, New York county.

Certiorari by the people, on relation of John S. Sutphen, against Thomas L. Feitner and others, as commissioners of taxes, etc., to

review an assessment on relator's real property. From an order quashing the writ (58 N. Y. Supp. 869), relator appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

U. W. Tompkins, for appellant.

Jas. M. Ward, for respondents.

PATTERSON, J. The relator obtained a writ of certiorari to review the action of the commissioners of taxes and assessments of the city of New York in fixing the value, for the purposes of taxation for the year 1898, of certain real estate owned by him situate on Riverside drive, between Seventy-Second and Seventy-Third streets, in the borough of Manhattan. In the petition for the writ the relator claimed error in the assessment for overvaluation and for inequality. In their return the commissioners presented a statement of their acts and proceedings, setting forth the method pursued in fixing the value of lands, including the relator's, namely, that the appraisement thereof was made by a deputy tax commissioner, who stated, under oath, that he had examined every house, building, lot, etc., within his district, and what in his judgment such property, "under ordinary circumstances, would sell for * * *." The return also refers to the making of the annual books, and the assessment rolls prepared therefrom, the entry of the relator's lots on such books by block and lot numbers, and the sums fixed upon as the value of such lots, respectively. It then sets forth that the relator, on or about April 28, 1895, made to the commissioners an application in writing expressive of his dissatisfaction with the amount of the assessment of his property, and asking that it be reduced, and that writing is annexed to, and forms part of, the return. It states, after referring to the property as vacant lots, as follows: "He [the relator] finds that the same has been assessed on the assessment roll of 1898 at a valuation of $145,-000, whereas the same should not have been, in his judgment, valued at more than $69,000, to be in proportion to the assessed value of adjacent property and in accordance with the marketable value thereof." It further states that "the market value of the property has not increased since 1895, and the ability to sell the property has in fact decreased. The property was assessed for the year 1895 at $57,000, being increased to $69,000 for the year 1896. It is vacant property, irregular in shape, and produces no income. Is rock at the curb line, covering all. He therefore asks that the same may be reduced to the amount stated." The commissioners then set forth in their return that, in order that no injustice should be done the relator, they directed the deputy tax commissioner to re-examine the property, and to report whether or not the alleged grievance had any substance; that, in accordance with such direction, a re-examination was made by such deputy tax commissioner. On May 9, 1898, he made a written report to them, in the following words: "I have re-examined the property referred to in the within application, and report as follows: That the increases made in

61 N.Y.S.—28

these valuations were made to conform to the general increase made in this section, and are fully justified by the market value of the property." Whereupon the commissioners, upon the evidence before them, "and the relator having submitted no evidence in support of his allegations, * * * determined that the assessment as originally fixed was just, and therefore confirmed it at that figure." The matter was brought to a hearing at the special term, upon the writ, petition, return, and schedules annexed thereto; whereupon the relator moved for judgment on those papers, which motion was denied. He then moved the court either to take testimony, or to order a reference of the issues raised by the petition and return. "It appearing to the court that testimony was not necessary to a disposition of the matter," that motion was denied. Counsel to the corporation then moved to quash the writ on the ground that it did not appear that the assessment complained of was illegal or erroneous or unequal for any reason alleged in the petition, and that motion was granted. The disposition the court made of the three several motions is contained in one order, from which the relator now appeals.

That the relator was not entitled to judgment upon the papers as presented to the court at special term is obvious. There was no evidence upon which a judgment could be founded. Nor was he entitled to a reference of the issues. He claims, in substance, that under section 253 of chapter 908 of the Laws of 1896, known as the "Tax Law," it became the duty of the court to order a reference because the taking of testimony was necessary for a proper disposition of the matter. He treats the proceeding as if it were an original and independent one, in which for the first time evidence in support of the relator's claims might be offered or produced by him. Support for his contention is sought in the recent decision of this court in People ex rel. Bronx Gas Co. v. Feitner, 43 App. Div. 198, 59 N. Y. Supp. 327; in which it was held, in general effect, that in all cases of this character, where an issue of fact is raised, the statute contemplates that testimony shall be taken, and that it was never intended by the legislature that issues raised by the petition and the return thereto should be tried in any other way; that the petition is in the nature of a pleading; and that, where it contains allegations of the grounds upon which the objections to the assessment are based, the terms of the statute requiring a reference, while permissive in form, are nevertheless mandatory. What was held in the Bronx Gas Co. Case we adhere to, but that was a case in which, as the record before the court disclosed, the relator had, in the preliminary proceedings before the commissioners of taxes, complied with the provisions of the law which required him to put before the commissioners the full grounds of his objection to the value of his property as fixed by them. It was also assumed in that case that everything had been done before the commissioners which the relator was bound to do.

By section 895 of the charter of the city of New York, it is provided that a person claiming to be aggrieved by the assessed valuation of real and personal estate may make application to the

board of taxes and assessments for a correction of the assessment. "If such application be made in relation to the assessed valuation of real estate, it must be made in writing, stating the grounds of objection thereto." It is true that by section 906 of the charter it is not specifically required that, in a petition for a writ of certiorari, it shall be set forth in terms that the petitioner has applied to the commissioners under section 895, but application to the tax board must precede a petition for a writ. A party'who neglects to apply to the commissioners to correct an assessed valuation cannot question it by certiorari. People v. Com'rs, 99 N. Y. 254, 1 N. E. 773. The return in this case shows that the relator did so apply. His application, however, was defective and insufficient. By section 889 of the charter, the deputy tax commissioners are to assess property in the several districts assigned to them, and to state, under oath, the amount for which, in their judgment, the property, under ordinary circumstances, would sell. It was not alleged by the relator in his application to the board of tax commissioners, nor shown, that his property was assessed at a greater sum than that for which, under ordinary circumstances, it would sell. It was merely stated that the market value of the property had not increased since 1895, and that the ability to sell the property had in fact decreased, and then were stated the sums at which the property was assessed in 1895 and 1896; but there is nothing to show that in those years it was assessed at its then market value. As was said in the court below, the application, while generally claiming an overvaluation, omits in its specification of facts any reference to actual market value. What was made by the relator before the board of tax commissioners was merely a claim, but the grounds of the claim—the facts relating to it—were not disclosed nor mentioned. The re-examination ordered by the commissioners was made only on the general claim of overvaluation. Their attention was not directed to specific facts, indicating that claimed overvaluation, which could have been considered and weighed had they been presented. And so, with reference to alleged inequality in the assessment, nothing whatever is stated constituting inequality, but merely an expression of opinion that, in the judgment of the relator, the property should not have been valued at more than $69,000, to be in proportion to assessed valuation of adjacent property, and in accordance with the marketable value. We think it is the duty of a complaining taxpayer to do something more than make a formal complaint upon a mere technical statement before the board. We think the complaint must be substantiated by averments or evidence tending to show, at least, that it has some support, and that it is the complainant's duty to state the facts to the commissioners, and that, unless that is done, the complainant has not put himself in a position to require a court, on a writ of certiorari, to enter upon a new and original inquiry. The office of a writ of certiorari is to review action already taken. In order that such a review may be had, it was incumbent upon the relator, in the first instance, to set before the commissioners the facts upon which he required them to act, and which he claims show inequal-

ity or overvaluation; otherwise, the proceeding before them is a merely perfunctory one, and the whole burden of revising the assessment rolls may be thrown upon the courts. We think the court below was right in refusing to order a reference, and that the case was properly disposed of on the petition and return and its schedules, and that the writ was properly quashed.

The order appealed from must be affirmed, with costs. All concur, except BARRETT, J., who dissents.

BARRETT, J. (dissenting). The only reason given for denying to the relator a writ of certiorari is the insufficiency of his application for a reduction of the assessment. It is held, in substance, that this application must set forth the facts showing the assessment to be illegal, and that the court will interfere only in case the commissioners have refused to give proper force and effect to the facts thus stated. Section 895 of the charter, however, merely requires that the application shall be made in writing, and shall state "the ground of objection" to the assessment. The "ground of objection" is one thing, and the facts in support of that ground quite another. The act even employs the singular "ground," instead of the plural. How that word can reasonably be interpreted to mean the underlying facts showing the illegality I am quite unable to see. It cannot have been meant that the relator should, in his written statement specifying the "ground of objection," go into every fact and circumstance upon which he bases his claim to revision, or which would be relevant upon the trial of an issue of overvaluation or inequality. That would be quite impracticable. It is intended merely that he shall set forth, in general terms, the reason why—the point in which—he thinks the action of the commissioners erroneous. With their attention thus called to the matter, it is their duty to re-examine the question. But the application was merely meant to give them a subject for further consideration, not the detailed facts upon that head. This view is emphasized by section 895 of the charter. That section provides that the board of taxes and assessments shall appoint one or more deputy tax commissioners, who shall "receive applications for revision and cancellation of any assessments, take testimony on such applications, and reduce the same to writing, and, when so reduced to writing, transmit such applications and testimony, together with his recommendation, to the board," etc. The section further provides that the board may prescribe the time and place for hearing such applications in the city record and at least one newspaper in each borough. The testimony taken upon such hearings is to form part of the record of the assessment. The application is thus plainly treated as a mere complaint, not as a presentation of the relator's case. The relator is to have a hearing upon this complaint, with an opportunity to produce his evidence. In the present case the commissioners did not give the relator this hearing. They chose to dispense with it. Whether they could legally do so need not be considered. If, as I think, the relator's application was sufficient, he has done all that he is required to do in order to entitle him to

a writ of certiorari, and whatever other remedy he may have had is immaterial.

I therefore think that the order should be reversed, and the proceeding remitted to the special term for a hearing upon the merits.