(33 Misc. Rep. 293.)

PEOPLE ex rel. MARLBOROUGH HOTEL CO. v. FEITNER et al., Tax
Commissioners.

(Supreme Court, Special Term, New York County. December, 1900.)

1. TAXATION — ASSESSMENT — REVIEW — APPLICATION FOR REDUCTION — AVER-
MENTS—SUFFICIENCY.

An application by a tenant for a reduction of an assessment on realty
stated that the property had been valued at $1,185,000, whereas it should
not have been valued at more than $650,000, to be in proportion to the as-
sessed value of adjoining property, and in accordance with the market
value thereof. Then followed a statement of facts on which the claim
to a reduction was based, inter alia alleging that the assessment was
raised the previous year to $650,000, and that its present valuation was
not justified either by its condition or the condition of other property
in its vicinity, or by its real or speculative value, and was largely in
excess of that placed on adjacent property; and then followed instances
of alleged inequality. *Held*, that it alleged, in substance, that the assess-
ment was for more than the market value, and that both as to over-
valuation and inequality it complied with Greater New York Charter
(Laws 1897, c. 378, § 895), requiring it to state "the ground of objection
thereto."

2. SAME—PETITION FOR CERTIORARI—SUFFICIENCY.

A petition for certiorari to review an assessment of realty for inequal-
ity, specifying, by way of comparison, numerous instances of property
located in the vicinity of that in question and elsewhere in the city,
which it alleges are of about the same value as that in question, and
that its assessment far exceeds the average assessment of properties
specified, complies with Greater New York Charter (Laws 1897, c. 378, §
906), requiring it to specify the instances in which inequality exists.

Application for certiorari by the people, on the relation of the
Marlborough Hotel Company, against Thomas L. Feitner and others,
commissioners of taxes. Petition granted, and reference thereunder
ordered.

Arnold & Greene, for relator.
John Whalen, Corp. Counsel, for respondents.

ANDREWS, J. This matter comes before the court upon a writ
of certiorari and the return thereto, to review an assessment for
taxation in the year 1899 of property on the west side of Broadway,
extending from Thirty-Sixth to Thirty-Seventh street, and known
as the "Hotel Marlborough." The assessment in question was at
the sum of $1,185,000. The Marlborough Hotel Company, which
holds the property upon a ground-rent lease which provides that it
shall pay all taxes, presented an application in writing to the tax
commissioners, within the time allowed by law, asking for a re-
duction of the assessment. The grounds of the objection, as stated
in such application, were two: First, that the property was over-
valued; second, that the assessment was made at a higher propor-
tionate valuation than other real estate on the tax rolls. The tax
commissioners considered the application, and reduced the assess-
ment by the sum of $20,000, and confirmed it with that reduction.
The company then obtained a writ of certiorari, and, the commis-
sioners having made a return to such writ, the proceeding came on
for hearing, and thereupon the counsel to the corporation moved to

quash the writ, and the counsel for the relator moved for a refer-
ence to take testimony pursuant to the statute. The motion to
quash was made on three grounds: First, that the writ was not
applied for within the time prescribed by statute; second, that the
marketable value of the real estate was not stated in said appli-
cation; third, that a sufficient number of instances of overvaluation
were not presented in the application. The first ground of objec-
tion was not urged, it being conceded that existing decisions of this
court, as they now stand, determine this question in favor of the
relator. The provision of law under which said application was
made to the commissioners is as follows (Laws 1897, c. 378, § 895):

"During the time that books shall be open to public inspection as aforesaid,
application may be made by any person or corporation claiming to be ag-
grieved by the assessed valuation of real or personal estate, to have the
same corrected. If such application be made in relation to the assessed val-
uation of real estate, it must be made in writing, stating the ground of ob-
jection thereto. The board of taxes and assessments shall examine into the
complaint, as herein provided, and if in their judgment the assessment is
erroneous they shall cause the same to be corrected."

Where the application is made for reduction upon the ground of
illegality, no question can arise as to the form of the application,
because it is clear that the application must state the nature of
such illegality. Where the application is made for reduction, either
upon the ground of overvaluation or inequality, there has been some
difference of judicial opinion as to what the application should
state. All that the statute requires is that the application should
be in writing, and should state the grounds of objection. It con-
tains no provision authorizing the applicant to present evidence,
either through witnesses or affidavits, nor does it authorize or re-
quire the commissioners to hear the testimony of witnesses, or to
receive affidavits made by such witnesses; and, if the question were
an original one I should think that the rule as to what the statute
requires the application to contain was correctly stated in the dis-
senting opinion of Barrett, J., in People ex rel. Sutphen v. Feitner,
45 App. Div. 547, 61 N. Y. Supp. 432. In the course of such dis-
senting opinion it was said:

"It cannot have been meant that the relator should, in his written state-
ment specifying the 'ground of objection,' go into every fact and circum-
stance upon which he bases his claim to revision, or which would be relevant
upon the trial of an issue of overvaluation or inequality. That would be
quite impracticable. It is intended merely that he shall set forth in general
terms the reason why—the point in which—he thinks the action of the com-
missioners erroneous. With their attention thus called to the matter, it is
their duty to re-examine the question. But the application was merely meant
to give them a subject for further consideration, not the detailed facts upon
that head."

Notwithstanding my concurrence with the views so expressed, it
is, of course, my duty to follow the decision of the appellate divi-
sion in that case, so far as it is applicable to the case at bar. It
appears to me, however, from a comparison between the contents
of the application in that case and those of the application in this
case, that the decision in that case is not controlling. With re-
gard to the application for reduction on the ground of overvalu-

ation in that case, Beekman, J., in his opinion (27 Misc. Rep. 384, 58 N. Y. Supp. 869) delivered at special term, said:

"His application, while generally claiming an overvaluation, omits in its specification of facts any reference to actual market value. All that he states on the subject is that the market value of the property has not increased since 1895, when it was assessed at $57,000, and that the assessment was increased to $69,000 for the year 1896."

The application in the present case, as in that, was made upon a printed blank furnished by the commissioners, and in it is the following statement as to his property:

"He finds that the property has been assessed on the assessment roll of 1899 at a valuation of $1,185,000, whereas the same should not have been, in his judgment, valued at more than $650,000, to be in proportion to the assessed value of adjacent property, and in accordance with the market value thereof. (Here state in detail the special facts upon which this application is based.)"

And then follows a long typewritten statement setting forth a variety of facts upon which the applicant based his claim for reduction, on the ground of overvaluation and inequality of assessment. Such statement contains, among other things, the following:

"The property in question is known as the 'Marlborough Hotel,' the assessment of which was last year (1898) raised to $650,000. The present valuation is not justified either by the condition of the property, or of property in its vicinity, or by its real or speculative value, and is largely in excess of that placed upon adjacent property. * * * This increase is excessive. It is about doubled. It was increased last year (1898) to $650,000, and is now (1899) jumped, without 'rhyme or reason,' to $1,185,000. As the tenant pays the tax, it must be reduced, or the tenant must go out of business."

Then follow instances of alleged inequality of assessment. It is true, there is no distinct allegation, in so many words, that $1,185,-000 is more than the market value, or more than the property would sell for under ordinary circumstances, but it is alleged, in substance, that that sum is more than the marketable value, and more than its real or speculative value, and also that the assessment of the property has been made at a higher proportionate value than the assessment of other real estate on the tax rolls of the city, and instances in which such inequality is alleged to exist are specified. It seems to me that, taking the statement made upon the printed blank above quoted in connection with such special facts, which are set forth at too great length to be all embodied in this opinion, this case is distinguishable from that of Sutphen v. Feitner, supra, and that the application did set forth the grounds of objection, as provided for in the statute, both as to overvaluation and inequality of assessment.

The next ground upon which it is claimed that the writ should be quashed is because of the insufficiency of the petition on which it was granted. The statute (Laws 1897, c. 378) under which the writ was issued is as follows:

"Sec. 906. A certiorari to review or correct on the merits any final determination of the board of taxes and assessments shall be allowed by the supreme court or any justice thereof directed to the commissioners of taxes and assessments on the verified petition of the party aggrieved, but only on the grounds which must be specified in such petition, that the assessment is illegal, and

giving the particulars of the alleged illegality, or is erroneous by reason of overvaluation, or in case of real estate, that the same is erroneous by reason of inequality, in that the assessment has been made at a higher proportionate valuation than the assessment of other real estate on the tax-rolls of the city for the same year, specifying the instances in which such inequality exists, and the extent thereof, and stating that he is or will be injured thereby."

The question as to what instances of inequality must be specified in the petition is a difficult one, because it involves, to a certain extent, the question of what evidence must be presented by the petitioner to justify the court in reducing the assessment. Without going further back than the act which established the present system of assessment for the purpose of taxation in the city of New York, section 20 of chapter 302 of the Laws of 1859 authorized the allowance of a writ of certiorari to review and correct on the merits any decision or action of the tax commissioners. Writs issued under this act brought up questions of illegality and overvaluation only. In 1880 the legislature passed an act, which was applicable to the whole state, including the city of New York, which allowed a review of the action of assessing officers, not only as to questions of illegality and overvaluation, but also of inequality of assessment. Section 821 of the consolidation act, passed in 1882, was a re-enactment of said section 20 of the Laws of 1859, which authorized a certiorari to review and correct on the merits any decision or action of the tax commissioners; and said section 821 was amended by section 2, c. 311, of the Laws of 1885, by adding the provision as follows:

"But only on the grounds, which must be specified in such petition, that the assessment is illegal, and giving the particulars of the alleged illegality; or is erroneous by reason of over-valuation."

The effect of these provisions of the consolidation act, as amended, was that at the time when the Greater New York charter went into effect no assessment for taxation made in the city of New York could be reviewed upon the ground of inequality. Section 906 of that statute, above quoted, restored the right to review assessments in the city of New York for inequality, and contained a provision (which was not contained in the said act of 1880) that the petition upon which application was made for a writ of certiorari should specify the instances in which such inequality exists; and it is this last-named provision which creates a very serious question as to what instances of inequality must be given in the petition to justify the issuing of the writ, and what proof must be given as to instances of inequality to justify the court in reducing the assessment. In certiorari proceedings brought under the above-cited act (chapter 269 of the Laws of 1880) it was held that, to entitle a property owner to a reduction of his assessment where an overvaluation is not established, it is not sufficient simply to show that some other property of the same description is valued on the same roll at a less proportionate value; that it must also appear that, by reason of the undervaluation of the particular property with which his own is compared, the claimant will be injured,—that is, compelled to pay more than his due share of the aggregate tax. People

v. Carter, 109 N. Y. 576, 17 N. E. 222. In the opinion delivered in that case it was said:

"The object of the statute was to afford a remedy to a party injured by unequal valuations, not to enable him, on mere proof of a mistake or misjudgment of the assessors, as to the relative valuation of his property and that of another, to have his assessment reduced, although his own property was not overvalued, and it does not appear, taking into view the aggregate assessment and valuation of the taxable property on the roll, that he will be compelled to pay more than his just share of the tax."

And in People v. Badgley, 138 N. Y. 314, 33 N. E. 1076, it was held that:

"Before a taxpayer whose property has not been assessed for more than its value can be said to be aggrieved, and so entitled to a review of his assessment under the act of 1880, c. 269, he must establish that his property is assessed at a higher proportionate rate than property generally in the town. Proof that some property is assessed at a lower rate of valuation is not sufficient, if upon the whole the average rate of assessment is no lower."

As above stated, said act of 1880 did not prescribe that the petition upon which a writ of certiorari was issued to review assessment for taxation on the ground of inequality should specify the instances in which such inequalities exist, whereas said section 906 of the Greater New York charter does declare that such instances must be specified. At some stage of the proceeding, therefore, the question will arise, and must be decided, whether the insertion of this provision in the Greater New York charter has changed the rule laid down by the court of appeals with regard to writs issued under said act of 1880 to review assessments on the ground of inequality; and this question is beset with difficulties. If a petitioner specifies a few instances of inequality, and a reference is ordered under the statute, and he proves that allegation, will he be entitled to a reduction? And if he specifies a few instances only of inequality, and a reference is ordered, must he be confined to proof of inequality in the instances specified, or may he institute a comparison between the valuation of his own property and that of other pieces of property not specified in the petition, or must he specify in his petition that inequality exists between the valuation of his own property and that of all the other property in the city, and, if a reference is ordered, must he substantiate that allegation by proof? It is not necessary to decide these questions at the present time, because they relate rather to the form of order to be entered, the proof to be given, and the relief to be awarded or refused in case a reference is directed after the referee has made his report. The petition in the present case is certainly drawn in full compliance with the statute. It specifies, by way of comparison, a great number of instances of property located in the vicinity of said hotel property, and elsewhere in the city of New York, which it is alleged are, on the average, of about the same value as that hotel; but it is alleged that notwithstanding this fact the assessed valuation of said hotel property is far in excess of the average assessment of such specified properties. I am therefore of the opinion that such petition is sufficient under the statute, and that the motion to quash the writ should be denied; and, as it appears that testimony is neces-

sary for the proper disposition of the matter, the court has no discretion under the power conferred by section 253 of chapter 908 of the Laws of 1896, but must order a reference. People v. Feitner, 43 App. Div. 198, 59 N. Y. Supp. 327. The order will be settled on notice.

Ordered accordingly.