(34 Misc. Rep. 299.)

PEOPLE ex rel. ZOLLIKOFFER v. FEITNER et al., Tax Commissioners.

(Supreme Court, Special Term, New York County. March, 1901.)

1. TAXES—ASSESSMENT—TAX ROLLS.

     The assessment and verification of tax rolls in the city of New York are governed by Charter Laws 1897, c. 378, subc. 17, and not by the tax law of 1896.

2. SAME—VALUATION.

     There is no provision in the charter of New York requiring the column in the tax book headed "Value of Real Estate" to show that such valuation was based on a sum for which the property would sell under ordinary circumstances.

3. SAME—OFFICIAL OATH.

     The only oath required by any officer connected with the making of assessments under charter of New York is that required by deputy tax commissioners under section 889.

4. Same—Reduction of Assessments.

Taxpayers cannot complain of reductions in their favor of assessments in New York City made after the opening of the books.

5. Same—Certiorari to Review.

Before a statutory writ can be taken out to the tax commissioners for the purpose of reducing assessment of taxes on the ground of inequality, he must apply to the tax commissioners, showing the facts relating to the grounds of his claim, and, unless that is done, he cannot require the court on writ of certiorari to enter upon a new and original inquiry.

6. Same.

Where, on application to the tax commissioners for review of assessments, a claim of inequality was not presented, but only a claim of overvaluation, the taxpayer cannot obtain a review on certiorari on the ground of inequality.

Application by the people, on the relation of Oscar Zollikoffer, against Thomas L. Feitner and others, commissioners of taxes and assessments, for the vacation or reduction of an assessment on relator's real estate. Denied.

Theodore Sutro, for relator.

John Whalen, Corp. Counsel (James M. Ward, of counsel), for respondents.

FREEDMAN, J. This is a proceeding for the vacation, or at least the reduction, of an assessment on real estate belonging to the relator, located at No. 202 Broadway, in the borough of Manhattan, city of New York. It was assessed by the commissioners of taxes at the opening of the books on the second Monday of January, 1899, in the sum of $280,000. On the written application of the relator, it was reduced to the sum of $275,000. The property was bought at private sale on July 11, 1899, for the sum of $300,000. The ground upon which it is claimed that the assessment should be vacated entirely is that the assessment is illegal and void, for the reason that it was not made in accordance with the provisions of law applicable thereto, "in that the deputy tax commissioners, who are required, under the direction of the board of taxes and assessments, to assess all the taxable property in the several districts that may be assigned to them for that purpose by the board, have not furnished to the said board of taxes and assessments, under oath, a detailed statement showing, among other things, in their judgment the sum for which the said property under ordinary circumstances would sell." This is the only allegation of illegality contained in the relator's petition for the writ of certiorari, and, upon it being shown by the return that the deputies had made oath that the several parcels of land had been assessed by them at the sum for which, in their judgment, said parcels would sell under ordinary circumstances, the counsel for the relator contended that that alone is not sufficient, because the tax books constituting the "Annual Record of the Assessed Valuations of Real Property," by the deputy tax commissioners, did not specifically show it, and because the heading of "Value of Real Estate" over the appropriate column in said record is utterly insufficient for that purpose. The discussion of this point took a wide range, and my attention was called to the provisions of the charter of Greater

New York upon this subject, the provisions of the general tax law, and to a great number of cases in which some point or other connected with the assessment of real estate was determined or discussed. Neither time nor space permits a review of all these citations, nor is it expedient to make such review here. I shall, therefore, content myself with the following brief statement of the conclusions reached by me.

1. As to the particular matter of the sum at which real estate in the city of New York shall be assessed, and how the assessment shall be verified, section 21, subd. 3, and section 37, of the general tax law do not apply, and the matter is regulated by the provisions of chapter 17 of the charter.

2. There is no requirement in the charter that the column in the tax books relating to the assessed values should show specifically that each assessed value represents the sum for which the assessed property, under ordinary circumstances, would sell. The information upon this point furnished by the deputy tax commissioners to the board may simply constitute a record of the department.

3. The only oath to be taken by any officer connected with the making of assessments under the charter is the oath required to be made by the deputy tax commissioners under section 889.

4. Taxpayers have no ground for complaint on account of subsequent reductions in their favor, and all that the respondents, as commissioners or as a board, are at any time required to do, is, upon completion of the assessment rolls, to annex to said rolls their certificates that the same are correct in accordance with the entries in the several books of annual record. Section 907. If this is a defect in the statute, it must be cured by legislation.

5. That in determining the particular meaning of the heading over the column of assessed values the presumption is that the officers charged by law with making the assessment did their duty in the premises.

6. That, under all the circumstances disclosed, the requirements of the charter have been substantially complied with, and no tangible ground exists for the vacation of the entire assessment upon relator's property. The relator's application, therefore, so far as it calls for the entire vacation of the assessment, must be denied.

It then remains to be seen whether the relator has presented a case which calls upon the court to assist him in obtaining a reduction. Neither the application filed with the commissioners nor the petition for the writ of certiorari makes any claim to overvaluation; that is to say, that the property in question was assessed at more than the sum for which, under ordinary circumstances, it would sell, or for more than its market value, or in excess of its actual value,—all of which expressions have, in several instances, been held to have precisely the same meaning. The reduction asked for is claimed upon the sole ground that the assessment is unequal, as compared with the assessed valuations of other real estate appearing on the tax rolls of the city of New York; and upon this point it is claimed that under a general allegation of such inequality, if controverted by the return, the relator is entitled, as matter of course, to at least a hear-

ing upon the merits or a reference under section 906 of the charter or the statute of 1896 (chapter 908, §§ 250–255). I cannot find that either the charter, or the statute referred to, or the decisions under it have established any such rule. There is nothing in the case of People v. Barker, 152 N. Y. 417, 46 N. E. 875, or in the case of People v. Feitner, 43 App. Div. 198, 59 N. Y. Supp. 327, as modified by the case of People v. Feitner, 45 App. Div. 542, 61 N. Y. Supp. 432, which supports any such contention. Each case must still stand upon its own bottom, and in each case it must still appear that the relator has complied with every prerequisite before he can claim the interposition of the court. When this is made to appear, the special statutory writ not only permits a review of. the jurisdiction and method of procedure, and an inquiry whether there has been a violation of any rule of law, or any competent proof of all the essential facts, or a preponderance of proof against the existence of any of those facts, but also authorizes a redetermination of all questions of fact upon evidence taken, in part at least, by the special term, or under its direction; and thus what is called a review may become a proceeding in the nature of a new trial. People v. Barker, 152 N. Y. 417, 46 N. E. 875; People v. Feitner, 51 App. Div. 196, 64 N. Y. Supp. 675. But, before this special statutory writ can be successfully resorted to, it is the duty of a complaining taxpayer to do something more than make a formal complaint upon a mere technical statement before the board of tax commissioners. The application to the board must set forth the grounds of the claim, viz. the facts relating to it, and, unless that is done, the complainant has not put himself in a position to require a court on a writ of certiorari to enter upon a new and original inquiry. This was expressly determined in People v. Feitner, 45 App. Div. 542, 61 N. Y. Supp. 432, affirming 27 Misc. Rep. 384, 58 N. Y. Supp. 869; and that decision I feel constrained to follow. From the full report of that case it clearly appears that the grounds of the claim must appear in the original application to the commissioners, and that, unless they are there, they cannot be subsequently supplied in the petition for the writ. In the case at bar the original application to the commissioners utterly fails to set out any fact or facts showing or tending to show that relator's property was assessed at a higher proportionate rate than property generally upon the same tax roll, or that the valuation complained of charged the relator with more than his just proportion of the tax. Not a single instance of inequality can be found in it. The special facts set forth show only that the building on relator's premises is upwards of 30 years old, and is old-fashioned in its construction and details, and in these days of so-called "sky-scrapers" cannot compete for tenants with modern office building. Upon these facts, and some others showing a gradual decline in the receipt of rents, the relator asked for a reduction of the assessed valuation from the sum of $280,000 to $140,000, and, after consideration of his grievance, the assessed valuation was reduced to $275,000. Taken as a whole, the application is nothing more than an expression of relator's opinion as to what the assessment should have been, in proportion, not to the actual or market value, but to the assessed value of

other property. The commissioners, in their return to the petition, therefore properly say that there was no allegation that relator's property had been assessed at a sum in excess of the sum for which said property would sell under ordinary circumstances; that the petition itself shows that said property was assessed at less than its market value; that the application did not state a single fact showing or tending to show inequality; and that the statements contained in the application, even if accepted as true, were not evidence impeaching the assessment of the deputy. From what has been already said it clearly appears that, inasmuch as the inequality now alleged was not presented to the commissioners in relator's application as a fact, the case at bar is controlled by the decision of People v. Feitner, 45 App. Div. 542, 61 N. Y. Supp. 432. The circumstance that the commissioners did entertain the application, and actually reduced the assessment by the sum of $5,000 on the theory of overvaluation, cannot avail the relator here after he shifted his ground by the petition from overvaluation to inequality. In any event, the commissioners could be held concluded only as to formal defects in the application, but its total insufficiency upon the point now urged is quite a different thing.

The last point to be considered arises upon the allegations of the relator's petition to the effect that a representative of the relator appeared before the commissioners, and then and there offered to furnish proofs in support of the written application of the relator, and that the commissioners gave no opportunity for the presentation of such proofs. Upon this point the corporation counsel cites the case of People v. Feitner, 51 App. Div. 196, 64 N. Y. Supp. 675. But in that case the writ obtained was a Code or common-law writ of certiorari, which the relator had made returnable at the appellate division, instead of at special term, and consequently whatever was said there with reference to the examination of witnesses or the taking of proofs has no application here. If, therefore, the application of the relator had been based upon an allegation of inequality, and such allegation had been supported by sufficient averments of facts, I should feel compelled to hold that the relator is entitled to be heard upon the merits. But the difficulty here again is that the relator applied to the commissioners for an opportunity to furnish proof in support of the allegations of his application to them, and that such application is utterly insufficient to entitle him to a hearing upon the only ground presented by his petition. The relator's motion for a hearing or a reference must be denied, and the respondents' motion to quash the writ must be granted, with costs.

Relator's motion denied, and respondents' motion granted, with costs.