(34 Misc. Rep. 305.)

PEOPLE ex rel. DAVIS v. FEITNER et al., Tax Commissioners.

(Supreme Court, Special Term, New York County. March, 1901.)

1. TAXATION—REDUCTION OF ASSESSMENT—SECRET TRUSTS.

Where a taxpayer carries on his books, according to his statement, a trust for the benefit of his children, the tax commissioners, having no notice thereof, are justified in refusing to reduce an assessment based thereon.

2. SAME—MERCHANDISE.

Where a merchant carries on his books merchandise as of a certain value, and insures it as of that value, the tax commissioners are justified in refusing to reduce their assessment based thereon, on his statement that it has since depreciated 50 per cent.

Certiorari by the people, on the relation of Mark Davis, against Thomas L. Feitner and others, commissioners of taxes and assessments, to review an assessment against the personal property of the relator. Writ dismissed.

Theodore Sutro, for relator.

Andrew T. Campbell, Jr., for respondents.

LAWRENCE, J. This is a proceeding by certiorari to review an assessment against the personal property of the relator at the sum of $75,000 for the year 1899. The facts shown by the papers are as follows: The relator was originally assessed by the deputy tax commissioner at the sum of $26,700, and that assessment was subsequently increased to $100,000 by notice given to the relator. The relator was examined by the defendants, and disclosed the following assets: Accounts receivable, $41,736.31; cash in bank, $20,234.34; merchandise, $27,935.81; bonds, $32,000,—$121,956.46. Against this sum the relator claimed to offset the following items of indebtedness: Accounts payable, $24,618.81; notes payable, $28,000; bond and mortgage, $16,000,—$68,618.81. In addition to this indebtedness, the relator claimed a deduction of $37,000, which amount he alleges had been set apart on his books in the names of his children, although he admitted that this money remained in his business; that it did not represent money borrowed or owing for merchandise; that his assets have not been decreased thereby; and that the children themselves had no knowledge of the transaction. It further appears that the relator accompanied said children to the office of commissioner of taxes, and that they in his presence took oath that they had no personal property. The commissioners alleged in their return that they determined from this evidence that this alleged indebtedness was not in fact a debt, but a mere book entry made for the purpose of evading taxation, and therefore refused to allow any deduction on account of this alleged liability. The relator's merchandise, which was disclosed to the commissioners of the valuation of $27,935.81, cost $55,871.62, and was insured at the cost, and the receivable accounts, disclosed at $41,736.31, were carried on the relator's books at $56,786.31. It does not affirmatively appear that any of the accounts receivable were not collectible, except one item of $1,000. The $32,000 worth of bonds disclosed by the relator rep-

resented the market value of said bonds while they were actually above par. It is claimed by the relator's counsel that the sum of $37,000, which it was sought to deduct from the amount of the assessment, was a trust created by him for the benefit of his children, and that the amount of said trust was illegally assessed against him individually instead of against him as trustee. I cannot accede to the soundness of this proposition. The cases in regard to deposits in savings banks which are referred to by the relator's counsel are not in point, for the reason that it appears from the testimony of the relator that that sum was really held for his own benefit, and I think that the court is justified in inferring that the entries in respect thereto made upon the relator's books were made for the purpose of evading taxation. If the right of a party to create such a secret trust be conceded, it is obvious that any person liable to be assessed for personal property could entirely escape taxation by simply declaring by an entry upon his books that all of his property was held in trust for his children or other persons, who were ignorant of the trust alleged to be created in their favor.

I am also of the opinion that the respondents were justified in making the valuation of the relator's merchandise and receivable accounts at the amounts stated by them. Upon his examination before the commissioners, the relator claimed that his merchandise, which cost $55,871.62 and was carried on his books and insured for that sum, was worth only $27,925.81. In determining that the book value and insurance value were better evidence than the opinion of the relator, and in fixing the value at $41,903.71, the commissioners made an allowance for depreciation of 25 per cent. I do not think, under the facts disclosed by the testimony of the relator before the commissioners, that their decision in regard to these amounts can be held to be arbitrary or unjust. The commissioners were not bound to take the statement of the relator that there had been a depreciation of 50 per cent. in value of the merchandise as absolutely true. Such a claim was inconsistent with the entries upon the relator's books and with the amount in which the insurance upon the merchandise had been effected. People v. Barker, 139 N. Y. 55, 34 N. E. 722; People v. Hicks, 105 N. Y. 198, 11 N. E. 653; People v. Barker, 147 N. Y. 31, 41 N. E. 435, 29 L. R. A. 393; People v. Feitner, 33 Misc. Rep. 293, 68 N. Y. Supp. 581 (Andrews, J.). In view of the statement made by the relator in his testimony before the commissioners as to the valuation of the bonds, I do not see that he has been aggrieved by the assessment of those bonds at their par value. He states in that testimony that those bonds were all worth a little above par. For these reasons I am of the opinion that the writ should be dismissed, and the assessment confirmed, with costs.

Writ dismissed, and assessment confirmed, with costs.