(61 App. Div. 156.)

PEOPLE ex rel. BROADWAY REALTY CO. v. FEITNER et al., Com'rs.

(Supreme Court, Appellate Division, First Department. May 10, 1901.)

CERTIORARI—TAX ASSESSMENT—PLEADING—REFERENCE.

Relator alleged in a petition for a writ of certiorari to review assessments for taxation that its real estate was assessed in 1898 at $1,500,000, and in 1899 at $2,500,000, an increase of 66⅔ per cent.; that in 1898 the total assessed valuation of all the real estate in the city of New York was $2,528,533,441, and in the year 1899 it was $2,932,445,464, an increase of 15.9 per cent.; that in 1898 the total assessed valuation of all the real estate in the borough of Manhattan was $1,856,467,923, while in the year 1899 it was $2,054,903,875, an increase of 10.6 per cent.; that the average assessed valuation of real estate on the same tax roll was assessed at a lower proportionate valuation than that of the petitioner; and that, at the average valuation of all the other real estate upon such roll, the petitioner's real estate ought not to have been assessed at more than $1,500,000, showing that there was an over and unequal valuation to the amount of $1,000,000. Held, that the petition was sufficient, prima facie, to show overvaluation and inequality, and hence the court properly directed a reference of the issues raised.

Van Brunt, P. J., dissenting.

Appeal from special term, New York county.

Certiorari by the people, on relation of the Broadway Realty Company, against Thomas L. Feitner and others, commissioners of taxes and assessments of the city of New York. From an order denying a motion to quash the writ to review the action of defendants in assessing certain real estate belonging to relator, and directing a reference of the issues raised by the petition for the writ, and defendants' return thereof, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

James M. Ward, for appellants.
Albert G. Milbank, for respondent.

McLAUGHLIN, J. The relator claims that the action of the commissioners in fixing the assessment, so far as the same relates to his real estate, is erroneous, (1) by reason of overvaluation, and (2) inequality, in that the assessment was made at a higher proportionate valuation than the assessment of other real estate on the same tax

roll for the same time. Many instances in which such alleged inequality exists, and the extent thereof, are set out in the petition, or in the schedule annexed to and made a part of it.

The counsel for the appellants insists that the writ should have been quashed, inasmuch as it does not appear from the petition upon which the same was granted that the assessment placed upon the relator's real estate was in excess of its market value, and that no facts are stated tending to show inequality. In this connection our attention is called to two decisions of this court which are claimed to be in conflict, and in reference to which it is said, to use the language contained in the appellants' brief:

"The most important question presented for determination on this appeal is whether the law as enunciated in the proceeding brought by People ex rel. Bronx Gas & Electric Co. v. Feitner, 43 App. Div. 198, 59 N. Y. Supp. 327, is limited only to the facts appearing in the record in that proceeding, or whether the law as announced by this court in the proceeding brought by People ex rel. Sutphen v. Feitner, 45 App. Div. 542, 61 N. Y. Supp. 432, is of general application, and not restricted to the special facts in the Sutphen proceeding."

There is no conflict between the two decisions. On the contrary, in the Sutphen Case the justice delivering the prevailing opinion took occasion to say that, "What was held in the Bronx Gas Co.'s Case, we adhere to." The petition in the case at bar brings the case squarely within the rule laid down in People ex rel. Bronx Gas & Electric Co. v. Feitner, and required that the court should take, or appoint a referee to take, testimony bearing upon the issues involved, to the end that a determination might be made upon the merits.

It appears from the petition that the assessment complained of is erroneous by reason of overvaluation, and also by reason of inequality, in that it was made at a higher proportionate valuation than the assessment of other real estate on the same tax roll, made by the same officers and for the same year, many instances of which, and the extent thereof, are set out in the petition, or in the schedule annexed to and made a part of it, and that the relator took the necessary proceedings before the tax commissioners to have the error corrected, but his efforts in that direction were unavailing. The petition also contains specific allegations showing inequality in the assessment, and in this connection alleges that the relator's real estate was assessed in 1898 at $1,500,000, and in 1899 at $2,500,000, or an increase of 66⅔ per cent.; that in 1898 the total assessed valuation of all the real estate in the city of New York was $2,528,533,441; and in the year 1899 it was $2,932,445,464, an increase of $403,912,023, or 15.9 per cent.,—"such increase being over 318% less than the percentage of increase in the assessed valuation of your petitioner's said real estate." A further instance of the inequality is set forth, in that it is alleged that in 1898 the total assessed valuation of all the real estate in the borough of Manhattan was $1,856,467,923, while in the year 1899 it was $2,054,903,875, an increase of $198,435,952, or $10^6/_{10}$ per cent.,—"such increase being over 538% less than the percentage of increase in the assessed valuation of your petitioner's said real estate." It is also alleged that the average assessed valuation of the other real estate upon the same tax roll was assessed at a

lower proportionate valuation than that of the petitioner's, and that, at the average valuation of all the other real estate upon said roll, the petitioner's real estate ought not to have been assessed at more than $1,500,000, showing that there was an over and unequal valuation to the amount of $1,000,000, to which extent the petitioner claims that he has been injured. These allegations, taken in connection with the other facts stated, are sufficient prima facie to establish overvaluation and inequality, and necessitate a trial of the questions raised.

The order appealed from is right, and should be affirmed, with costs.

PATTERSON and INGRAHAM, JJ., concur.

HATCH, J. I concur in the result reached by Mr. Justice McLAUGHLIN in this case. It does not, however, appear to me that the averments of the petition are sufficient to show that the assessment upon the petitioner's property is higher than the fair market value of the same. Indeed, nothing is said in the petition from which such fact could be inferred; and, in the application which was made by the relator to the commissioners of taxes and assessment for the reduction of the assessment, its statement upon this subject was in the following language:

"It finds that the same has been assessed on the assessment roll of 1899 at a valuation of $2,500,000, in order to be in proportion to the assessed value of adjacent property, and in accordance with the marketable value thereof."

It is clear that this statement falls far short of showing that the assessment is in fact higher than the fair market value of the property; and a similar averment was condemned as insufficient in People v. Feitner, 45 App. Div. 542, 61 N. Y. Supp. 432. People v. Feitner, 43 App. Div. 198, 59 N. Y. Supp. 327, is not an authority in favor of the relator upon this subject; for therein it was made to appear that the property the subject of the assessment was assessed for a larger sum than its fair market value. There is no basis, therefore, upon which the relator can found any claim to relief in this respect.

We come, therefore, to a consideration of whether the claim, as made before the commissioners and averred in the petition, is sufficient to show inequality in the assessment. By virtue of the provisions of section 250 of the tax law of 1896, the petition is required to state, if the assessment was claimed to be erroneous by reason of overvaluation or inequality, the extent of such overvaluation, and that it was made at a higher proportionate valuation than the assessment of other property on the same roll by the same officers, specifying the instances in which such inequality exists, the extent thereof, and stating how the relator will be injured thereby. Section 906 of the Greater New York charter upon this subject is in all respects the same as the general provision. This language of the statute is somewhat different from that which was contained in chapter 269 of the Laws of 1880, providing for the review and correction of illegal, erroneous, or unequal assessments, section 1 of which provided what the petition should contain in order to authorize the issuance of the writ. Its language is in all respects similar to that contained in the act of 1896 and in the charter, except that the later provisions require the

petitioner to specify the instances in which such inequality exists and the extent thereof, which was not contained in the prior provision. In People v. Carter, 109 N. Y. 576, 17 N. E. 222, the act of 1880 became in this respect the subject of discussion, and it was there said:

"The mere fact that the claimant can show that his land is assessed proportionately higher than a certain other piece on the same roll does not alone show that he is aggrieved, or that he will be compelled to pay more than his just share of the aggregate tax. * * * We think it may be safely said that the petitioner must show a state of facts from which a presumption justly arises that the inequality of which he complains will subject him to the payment of more than his just proportion of the aggregate tax, and that this presumption is not raised by proof that in a particular instance property is assessed at a proportionately lower value than his own. Nor does it, we think, make any difference that the assessments compared were of contiguous property. The object of the statute was to afford a remedy to a party injured by unequal valuation, not to enable him, on mere proof of a mistake or misjudgment of the assessors, as to the relative valuation of his property and that of another, to have his assessment reduced, although his own property was not overvalued; and it does not appear, taking into view the aggregate assessment and valuation of the taxable property on the roll, that he will be compelled to pay more than his just share of the tax."

Under this authority, it seems clear to my mind that a mere aver-ment of difference in percentage or proportion which this property bears to the proportion of all the other real property assessed upon the same roll in the city does not furnish any proof whatever of inequality of assessment, nor does it furnish any proof whether the percentage is higher or lower, as compared with the whole, either of over-valuation or inequality in assessment, because from this fact alone it is not made to appear that the relator will be compelled to pay more than his just share of the tax. The fact that in the present case the percentage is shown to be higher than the average of all the other taxable property in the city, in the absence of all other averments showing injury, falls short of a showing that the assessment is too high for any of the reasons specified in the statute. On the contrary, it is entirely consistent with the fact that it was assessed too low; for, when compared with all the other property, it might appear that by reason of situation it enjoyed greater advantages, and therefore was of much higher relative value. Such is the fact in many instances with respect to particular pieces of property, as compared with the whole. Mere percentages of increase, therefore, over the aggregate of all the property assessed, in the absence of other averments, would not establish inequality of assessment or overvaluation. In addition to this, it probably always happens that upon every assessment roll some pieces of property are assessed at a higher rate than others, and yet such fact furnishes no reason for the reduction of the particular assessment. It must always appear that the rate of assessment is proportionately higher when measured by relative conditions (People v. Badgley, 138 N. Y. 314, 33 N. E. 1076); otherwise, it is not made to appear that the relator is aggrieved by the particular assessment. This was the rule under the act of 1880. The language of the act of 1896 requires more particular specification than did the act of 1880. It was decided in People v. Webster, 49 App. Div. 556, 63 N. Y. Supp. 574, that where the claim was made that the assess-

ment was out of proportion to all the other property of the town as-sessed upon the same roll, it was not necessary to specify particular instances; but it is clear that a mere allegation of difference in per-centage, unaccompanied by other averments from which the dispro-portion may appear as matter of fact, would not be sufficient, for rea-sons to which we have already adverted. It was further held, in the case last cited, that where reliance was had upon the averment that the assessment is relatively higher than upon other particular pieces of property similarly situated, specification of the pieces, with the description, is required.

While the averment of disproportion in percentages is not sufficient in the present case, yet it is proper in connection with the other aver-ments of the petition, and I think that, reading the whole petition, enough appears to justify the issuance of the writ in this case. In the seventh paragraph of the claim filed by the relator it is averred that, "in addition to the instances specified in the annexed Schedule A, your applicant specified the following particular instances, among others, covering large pieces of property, and buildings of kindred size, character, value, or location to your applicant's said real estate, the assessments to which for this year are of a much lower propor-tionate valuation than the assessment of your applicant's said real estate, and the percentage of increase in the assessed value of which is less than the percentage of increase in the assessed value of your applicant's said real estate." This is followed by the specification of numerous particular instances of property in which the percentage of increase in assessed value is very much less than the increase of the relator's property; all of which are in addition to the specifications of Schedule A thereto attached. While the specifications of instan-ces of inequality are not so full and satisfactory as they might and perhaps ought to be, in that the applicant failed to allege the mar-ket value either of his own or the other properties referred to, so that the ratio of the assessments to market values cannot be ascertained from it, yet I think enough appears from it so that it may be justly said that a presumption arises that the inequality of which the re-lator complains will subject it to the payment of more than its just proportion of the aggregate tax. Particularly in view of the aver-ments of the ninth paragraph of the application, that "as to all such real estate (and especially as to all instances in this application and in the annexed Schedule A referred to) there has been no decrease in the marketable values thereof since and prior to the assessment of 1893," and that "none of the said several assessments thereof in 1898 were, proportionately to the value thereof, lower than the assessment of your applicant's said real estate for that year." No other infer-ence can well be drawn from the whole statement than that, if true, the relator will be subjected to the payment of more than its just pro-portion of the aggregate tax by reason of the alleged inequality. I therefore think that the order should be affirmed, with $10 costs and disbursements.

VAN BRUNT, P. J. I dissent. There were no facts before the commissioners showing error; and, if every case of an attack upon an

assessment must be referred, the court becomes the taxing officer. It is only where it appears upon the face of the record that some error has been committed that the court can interfere; and then, if it desires, it may take further evidence, precisely as it is empowered to do upon appeals from the surrogate's court.