The People ex rel. Henry Morgenthau, Appellant, *v.* Artemas S. Cady, Respondent.

The words " belonging to the same owner " in the provision of the act of 1843 (§ 8, art. 3, chap 230, Laws of 1843), relating to the collection of taxes in the city of New York, which provides that in advertising lots " to be sold for non payment of taxes, it shall be the duty of the comptroller to advertise the  *  *  *  lots  *  *  *  ying contiguous

to each other and belonging to the same owner in one parcel," do not mean simply the technical owner of the title, but the person in whose name as owner or occupant the land is assessed.

Where, therefore, contiguous lots owned by one person are assessed to different occupants the comptroller has the right to sell them separately, unless some proof of ownership is given before advertising, and demand made to advertise in one parcel.

As to whether the said provision is mandatory or merely directory, quære.

Upon sale of lands for unpaid taxes under said act, the term of years for which the successful bid is made commences to run from the day of sale; the time when the purchaser is to be entitled to his lease should be reckoned from that date, and the certificate of sale should bear date as of that day.

It is proper, therefore, that the notice to redeem should require payment of interest from the day of sale, not from the day when the purchaser paid the purchase-money.

A notice required by said act (§ 20, art. 3), to be served by the purchaser, after receiving his conveyance, "upon the person last assessed as owner," was dated July 26, 1868. *Held*, that at that date the person assessed in 1867 was last assessed owner (§ 7, chap. 302, Laws of 1859), and service upon him was proper.

The venue to the affidavit of service was "city and county of New York," and the person making it was described therein as "of the city of New York." *Held*, that the fair intendment therefrom was that the affiant was a resident of that city and so the affidavit showed a sufficient compliance with the statutory requirement (§ 20, art. 3), that service should be made by a resident of the city.

The affidavit stated that the notice was served by leaving the same with a member of the family of the person last assessed as owner at his place of residence, naming the street and number    *Held*, sufficient.

*It seems* if the requirements were that service was to be made in New York, the fair inference from the affidavit is that it was there served.

The affidavit was sworn to before a commissioner of deeds of said city. *Held*, that said officer was authorized to administer the oath. (2 R. S. 284, § 49.)

(Argued March 15, 1887   decided April 19, 1887.)

APPEAL from order of the General Term of the Superior Court of the city of New York, made July 2, 1886, which affirmed an order of a Special Term denying a motion for a writ of *mandamus* herein.

The nature of the writ asked for and the material facts are stated in the opinion.

Statement of case.

*Alexander B. Johnson* for appellant. The relator has a lawful right to pay this tax unless the sale was valid, and the notice necessary to cut off the right of redemption was served as required by law. (2 Desty on Tax. 890 ; *Bensel* v. *Gray,* 44 Supr. Ct. 375 ; *Clementi* v. *Jackson,* 92 N. Y. 594 ; *Townshend* v. *Cady,* 51 Supr. Ct. 318 ; *S. C.,* 50 id. 399 ; *Hilton* v. *Bender,* 69 N. Y. 81 ; *Miner* v. *Beekman,* 50 id. 343.) The lease itself furnishes no evidence *per se* of the regularity of any of the proceedings either prior to the sale or subsequent to it. (*Striker* v. *Kelly,* 7 Hill, 9 ; *Doughty* v. *Hope,* 1 N. Y. 79 ; *Vogler* v. *Walsh,* 22 Hun. 140.) The sale was invalid because the two lots were contiguous to each other and were advertised and sold separately without the request of the owner. (Laws of 1843, chap. 230, art. 3, § 8 ; *Cunningham* v. *Cassidy,* 17 N. Y. 276 ; *Hilton* v. *Bender,* 69 id. 79, 81, 83 ; Cooley on Tax. 324.) The notice to redeem required redemption by paying interest from date of sale. (*People ex rel. Haddock* v. *Cady,* Daily Reg. April 7, 1886.) Section 5, chapter 10, Laws of 1867, did not apply to any assessment already made. (1 R. S. 389 ; *Whitney* v. *Thomas,* 23, N. Y. 281 ; *Paillet* v. *Youngs,* 4 Sand. 60 ; *Sanders* v. *Leary,* 36 Barb. 75.) The right of relator to pay this tax was conceded at the Special Term, unless the notice was filed as required by sections 20, 21, 22, 23, etc. ; Laws 1843, art. 3, chap. 230 ; (*Donahue* v. *O'Connor,* 45 Supr. Ct. 278 ; *Newell* v. *Wheeler,* 48 N. Y. 486 ; *Hilton* v. *Bender, supra ; Conger* v. *Dougherty,* 43 N. Y. 107.) The affidavits of service were not sworn to before any officer authorized to administer oaths in such a case, and therefore are a nullity on their face.. (R. S. [2 Edm. ed.] 293, 294, part 3, tit. 2, § 49 ; *Stanton* v. *Ellis,* 16 Barb. 319 ; *Lame* v. *Morse,* 6 How. Pr. 394.) There being no dispute as to the facts disclosed by the affidavits a peremptory writ should issue. (Code, § 2070 ; *Ex parte Rogers,* 7 Cow. 526 ; *People ex rel.* v. *Throop,* 12 Wend. 183 , *People ex rel.* v. *Supervisors,* 64 N. Y. 600 ; *People ex rel.* v. *Laidlaw,* 102 id. 590.)

*David J. Dean* for respondent. The right to avoid the sale was lost by acquiescence and unexplained neglect. (*Cunningham* v. *Cassidy*, 17 N. Y. 276; 9 Daly, 22.) The tender was insufficient. (Laws of 1843, chap. 230, art. 3, §§ 2, 10.) The relator has not put himself in position to apply for a peremptory writ of mandamus. (*People* v. *Hoyt*, 66 N. Y. 606.) The statutory provision relied on requires the comptroller to advertise all the houses and lots or other lands lying contiguous to each other and belonging to the same owner, in one parcel, unless otherwise requested by such owner. (Valentine's Laws, 1263; 2 R. S. 369, § 38; *Cunningham* v. *Cassidy*, 17 N. Y. 276.)

PECKHAM, J. The relator herein asks the court to compel the defendant by *mandamus* to accept certain moneys sufficient in amount, as he alleges, to pay the taxes and interest on two certain lots in the city of New York for the year 1860, and to give receipted bills therefor. The defendant is clerk of arrears in the city and has refused to give such receipt on the ground, among others, that there are no arrears of taxes against the premises for the year spoken of, because they have been sold for such arrears, and the sale took place January 20, 1866, and on the 19th of January, 1869, a lease thereof was granted for 1,000 years for each lot.

Several different grounds are stated in the relator's affidavit upon which this application is based, all of which have been held untenable by the Special and General Terms, and from their adverse determination he has appealed here. The more material grounds will be noticed in their order :

*First.* It is claimed that the sale was illegal and conveyed no title to the purchaser because of the alleged violation of the eighth section of the third article of chapter 230, of the Laws of 1843, relating to the collection of taxes in the city of New York. It seems that the premises in question were known in 1860 as lots 13 and 14, block 1272, of the twelfth ward of the city, and were contiguous lots. Lot 13 was, in 1860, assessed to A. Carrigan, and the other lot was assessed

to Mrs. Lyons, and the taxes so assessed, remained unpaid until January 20, 1866, when each lot was sold for such arrears. The relator alleges that these lots belonged to the same owners (Rose Hannah Gray and Florence Kuberly) from August 1, 1859 to April 4, 1866; that they were contiguous to each other and that the city comptroller advertised said lots for sale in separate parcels without the consent or request of the owner.

The section of the statute in question reads as follows:

"Section 8. In advertising houses and lots, improved or unimproved lands, to be sold for the non-payment of taxes, it shall be the duty of the comptroller to advertise all the houses and lots or other lands lying contiguous to each other and belonging to the same owner, in one parcel, unless otherwise requested by such owner."

We are of the opinion that the words "belonging to the same owner" in the above section do not mean simply the technical owner of the title, but as therein used they mean the person in whose name as owner or occupant the lots are assessed. The assessment rolls are the only record the comptroller has before him from which to decide who is the owner and in cases where the land was assessed to the occupant, (as in some cases it might be, 1 R. S., 389, § 2; *Whitney* v. *Thomas*, 23 N. Y. 281, 285,) the comptroller would be without any evidence of ownership. It cannot be supposed that under such circumstances the statute contemplated a search by the comptroller through the register's office to find out whether the lands which were assessed to different occupants but which were contiguous were not owned by the same owner, for the purpose of deciding whether to advertise them in one parcel or not. For this purpose the person assessed must be assumed to be the owner.

If contiguous lots were assessed to the same occupants it would be reasonable to say that the statute contemplated an advertisement of both lots in one parcel, while if they were assessed to different occupants it would justify a separate advertisement by the comptroller even though it should sub-

sequently turn out that the lots belonged to the same owner, unless some proof of ownership should have been given before advertising, and some demand should have been made to advertise in one parcel.

This construction gives to the statute a reasonable meaning, one easily capable of being carried out and with a fair presumption that the object of the provision would be attained. That object we think was to prevent an unnecessary accumulation of costs of advertising where the lots were contiguous, and being assessed to the same person one advertisement would answer every purpose. Within this construction the separate advertisement of these contiguous lots was proper. We do not mean by putting our decision on this ground to say that the statute is not merely directory on this point. We leave that question open.

*Second.* Another ground upon which the sale is alleged to be void is set up in the following language : " Deponent further says that deponent believes that said Cady based his refusal to accept such money on a pretended sale for non-payment of such tax, and deponent alleges such sale, if had, was wholly void.

" 2d. Because the comptroller by his notice to redeem required the owner to pay such tax with interest from date of sale, to wit, January 20, 1866, whereas the purchaser did not pay his money upon such sale until the 12th day of February, 1866."

No copy of this notice to redeem is set forth in the moving papers and its contents appear only as above stated. Under section 1 of article 3 of this chapter, the comptroller proceeds to advertise for sale and to sell lands upon which taxes have been unpaid for a certain time. The sale takes place at the time named in the advertisement unless the taxes are paid in the meantime, and the lands are sold for the lowest term of years which a person will bid and pay the taxes due thereon. A certificate of sale is to be given describing the lands purchased, stating the term of years for which they were sold, the sum paid and the time when the purchaser will be entitled to a lease.

There can be no doubt, as it seems to us, that the term of years for which the bid is made, commences to run from the time of the bid, which is the day of sale. The time when the purchaser is to be entitled to his lease should also be reckoned from the date of the sale. As these two periods commence running from that date, we think the certificate of sale should also bear the same date. The certificate is simply a written acknowledgment or proof that the sale itself has taken place. It is the sale which is the foundation for all subsequent proceedings and upon such sale is based the right to convey the title to the purchaser when the time expires which will entitle him to the conveyance for the term he bid at such sale. This formal written certificate may perhaps, as matter of fact, be actually made out and delivered some time after the sale, but it is executed and takes effect by virtue of the sale, and relates back to that time, and in contemplation of law is then given and should be thus dated.

It is further provided by the second section of that article, that six months before the expiration of two years after the sale the comptroller again advertises that unless the land be redeemed by a certain day it will be conveyed to the purchaser.

If the person claiming title to the land shall not within two years from the *date of the certificate* pay the proper amount to the comptroller he loses his land. It is thus seen that the date of the sale and the date of the certificate of sale being properly coincident there is nothing material in the fact that the sale in this case was on the twentieth of January, while the purchaser did not pay his money until the twelfth of February following. The time of the payment of the purchase-money does not determine the date of the certificate, and as there is no allegation as to what that date was, it will be presumed here that it was the proper date, viz., the date of the day of sale. We are aware that it has been argued that the certificate of sale should be dated as of the day when issued, if not actually issued on the day of sale, for it is then, as it is said, that the purchaser pays his money ; otherwise the owner in redeeming has to pay interest to the purchaser at the

rate of fourteen per cent, between the day of sale and the day
when the purchaser pays the amount of his bid, while during
that time the money has been in the pocket of the purchaser.
This may be a possible result in practice if the comptroller
do not insist (as he may) upon immediate payment of the
amount of his bid by the purchaser.

But this interest is imposed chiefly by way of penalty upon
the delinquent taxpayer, and the fact that as practically con-
ducted the sales by the comptroller may sometimes result in
the payment to the purchaser of interest for a short time upon
moneys not yet advanced by him, is not of much weight in
that view of the law.

It is certainly of not enough weight to cause us to vary from
a construction of the statute which we think reasonable and
proper where the result of the opposite construction might be
to avoid the bar of the statute in all cases where the day of sale
and the date of the certificate were different and the notice to
redeem called for payment of interest from the earlier date.

*Third.* The relator claims that the notices which section
20 of the third article of the same statute requires should be
served by or on behalf of the purchaser (after he has received
his conveyance) upon the person last assessed as owner, were
not served on such person and the fact as he claims appears
upon the face of the notice.

As to lot 13 one notice is directed to the asylum for luna-
tics as the occupant at that time (July 26, 1868), and another
to " A. Carrigan, last assessed owner of said premises," and the
latter notice bearing the same date as the other, states that
the lot (13) was taxed in that name on the assessors' book
for the year 1867. The same facts with different names
apply to lot 14. The criticism made is that the assessors'
book for 1868 was at that time (July 26, 1868) the last book,
and hence the notice was addressed to one appearing on a
former, but not necessarily the last roll, and that therefore it
did not appear that the notice was to the person last assessed
as owner. We have no doubt that in July, 1868, the person
assessed in 1867 was the last assessed owner.

The assessments against persons and property in New York city at that time were commenced on the first Monday of September in each year (Laws of 1859, chap. 302, § 7), and these assessments were put in books called "the annual record of the assessed valuation of real and personal estate," and these books were open for examination and correction from the second Monday of January until the first day of May in each year, and after that the books were closed to enable assessment-rolls to be made. The rolls are thus taken from these record books which contain the assessments made since the prior September, and which were concluded by the second Monday of January, and were then open for revision, and hence the assessment-rolls existing in July, 1868, were based upon the assessments made from September, 1867, which were the last assessments then in existence, and the notice in July, 1868, to the person appearing as assessed on the assessors' book for 1867 must be taken to be a notice to the then last assessed owner of the premises.

*Fourth.* It is further claimed that it does not appear that the person making the affidavit of service of the notice provided for in said section 20 of article 3 was a person residing in the city of New York as is required by the twenty-third section of the same article. The affidavit has the venue of " city and county of New York," and continues " I, Phineas C. Kingsland, of the city of New York, do solemnly swear," etc. I think here is a fair intendment to be made that the person thus swearing was a resident of the city.

The fact that the affidavit of a person residing in the city was made necessary by the statute may be properly considered with reference to the meaning of the expression " of the city of New York" contained in the affidavit. The fact of residence must exist but we find nothing in the statute expressly requiring such fact to be stated in the affidavit; so long as it exists it would seem sufficient, and certainly so when there is no hint that he was not a resident of the city.

*Fifth.* Another ground taken is that the affidavit fails to state where the service was made, the statute requiring it to

be served personally or by leaving it at the dwelling-house of the occupant and person last assessed as owner with any person of suitable age, etc.  (§ 21, same act.)

The affidavit stated the notice was served by leaving the same with a member of the family of the person last assessed as owner, at his place of residence No. 68 Fifth avenue.

This is sufficient.   The statute does not make it necessary that the city or residence should be stated.   Leaving the same at the dwelling-house of the occupant is the requirement of the statute when the service is not made personally, and an affidavit showing the service upon a member of the occupant's family at his place of residence, naming the street, is surely sufficient.

If the requirements were that the service was to be made in New York we think the inference that the service was there made is a fair one, considering that the venue of the affidavit was in that city, and that the taxed premises were there situate, and that service was to be made on the owner last assessed and upon the occupant.

*Sixth.* It is also claimed that the affidavit was not sworn to before any officer authorized to administer oaths.   It was sworn to before a commissioner of deeds of New York city. The Revised Statutes provided that an oath or affidavit when required in any cause, matter or proceeding, might be taken among others before a commissioner of deeds, and when certified by him to have been taken before him might be read in any court, or before any officer judicial, administrative or executive before whom any such cause, matter or proceeding might be pending.  (2 R. S. 284, § 49.)   This gave ample authority to the commissioners.   The affidavit purports by its venue to have been taken in the city and county of New York, and it is signed by a person as commissioner of deeds. Upon an affidavit with such a venue the presumption is that the person signing himself commissioner of deeds is such within the place stated as the venue.

We have thus gone over the principal grounds relied on in the brief submitted by the counsel for the appellant.   We

have also examined all the others. We think there was no error in the decision of the case and the order of the General Term of the Superior Court of the city of New York should, therefore, be affirmed with costs.

All concur.

Order affirmed.