PEOPLE ex rel. MYERS v. MOYNAHAN, Collector of Assessments.

(Supreme Court, Appellate Division, First Department. January 8, 1909.)

1. MANDAMUS (§ 174*)—EFFECT OF AFFIDAVITS.
     Where opposing affidavits are read on a motion for a peremptory writ of mandamus which are in conflict with the averments in the affidavit of the relator, the right to the writ must be determined on the assumption that the averments in the opposing affidavits are true.
     [Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 174.*]

2. TAXATION (§ 658*)—SALE FOR NONPAYMENT OF TAX—NOTICE OF SALE—NAME OF OWNER—"OWNERSHIP OF PROPERTY."
     Greater New York Charter (Laws 1897, p. 367, c. 378) § 1027, provides that when taxes remain unpaid for three years, or water rents are unpaid for four years, the collector shall advertise such lands for sale at a day specified, and there shall be appended to the notice of sale a statement of the property sold, or the statement of the property may be published in a pamphlet, and the notice shall also state that the statement of the taxes and "ownership of the property" is published in the pamphlet. In a pamphlet published in proceedings to sell property under this section, the name of the owner of property was not given, but opposite

the description of the lot, under the heading "To Whom Assessed," appeared the name of the person to whom the lot was assessed. Under Greater New York Charter, § 889 (page 317), the name of the owner or occupant is to be given in the assessment of property if known, but under section 894 (page 319), a tax is not invalid because the name of the lawful owner is not inscribed in the assessment roll. *Held*, that by the "ownership of the property" is meant the name of the person to whom it is assessed, and that the sale based on this notice was valid.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 658.*]

Appeal from Special Term, New York County.

Action by the People, on the relation of Theodore W. Myers, for a peremptory writ of mandamus against Daniel Moynahan, as Collector of Assessments and Arrears, etc. Writ refused, and plaintiff appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, SCOTT, and HOUGHTON, JJ.

James Kearney, for appellant.
David Rumsey, for respondent.

McLAUGHLIN, J. The relator was the owner of a certain lot of land in the city of New York, upon which the taxes for the years 1893 to 1898, inclusive, and 1900, and the water rents for the years 1897 to 1899, inclusive, were not paid. The city in 1905, assuming to act under the provisions of section 1027 of the Greater New York Charter (Laws 1897, p. 367, c. 378, as amended by Laws 1901, p. 437, c. 466), caused the property to be advertised for sale by reason of the unpaid taxes thereon, and the same was subsequently sold, and a certificate of sale issued to the city and thereafter assigned by it to one Phyfe. Subsequent to the sale and assignment, the relator applied for a peremptory writ of mandamus directing the respondent, as collector of assessments and arrears in the finance department of the city, to furnish him with bills for the taxes and water rents referred to, to accept payment thereof, and to cancel the record of the sale of the property which he claimed was invalid. His application was denied, and he appeals.

Section 1027 of the Greater New York Charter provides that when any taxes on lands remain unpaid for three years, or rents for water shall have been due and unpaid for four years, the collector of assessments and arrears, under the direction of the comptroller, shall advertise such lands for sale at a day and place specified, and there shall be appended to the notice of sale "a particular and detailed statement of the property to be sold * * * or the said detailed statement and description, instead of being published, * * * shall, at the option of the said comptroller, be printed in a pamphlet. * * * And the notice * * * shall also state that the detailed statement of the taxes * * * and the ownership of the property * * * is published in 'certain newspapers' or in a pamphlet, as the case may be, and that copies of the pamphlet are deposited in the office of the said collector, and will be delivered to any person applying for the same." In the present case, the detailed statement of the property was published in a pamphlet. The relator alleges that it did not appear in the pam-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

phlet whether the lot in question was vacant or improved, and that it was stated to be owned by or assessed to one B. F. Beekman, who was not the owner thereof, by reason of which he claims that the sale was invalid. The relator also alleges that the property was not sold on the day it was advertised to be sold, but that subsequently, on the application of Phyfe, an alleged certificate of sale was made out to the city and by it assigned to Phyfe.

It is unnecessary to consider the claim that the property was not sold on the day alleged, since the opposing affidavits show that the sale took place at the time advertised, and that an assignment was actually made. The rule is well settled that where, upon motion for a peremptory writ of mandamus, opposing affidavits are read, which are in conflict with the averments in the affidavit of the relator, then the right to the writ must be determined upon the assumption that the averments in the opposing affidavits are true. Peo. ex rel. Corrigan v. Mayor, 149 N. Y. 215, 43 N. E. 554.

There then remains only the question of whether the sale was invalid because the name of the owner of the property sold was not given. No attempt was made in the published pamphlet to give the name of the owner of the property, but there did appear opposite the description of the lot the name "B. F. Beekman," under the heading "To Whom Assessed."

The claim that the property was not sufficiently described is not seriously urged, so that the only question which need be considered is whether the sale was invalid by reason of the failure to name the plaintiff as owner. I am of the opinion that it was not. On turning to section 1027 of the charter, it will be observed that it does not specifically require the owner's name to be given. It provides that "a particular and detailed statement of the property to be sold" shall be published or printed in a pamphlet, but that this statement must contain the name of the owner is to be implied only from the provisions which follow. These are to the effect that the notice of sale shall state that the detailed statement of the taxes and the ownership of the property is so published or printed. This section and the following one (section 1028), which provides that contiguous lots belonging to the same owner shall be advertised in one parcel, unless the owner otherwise requests, are substantially re-enactments of sections 926 and 927 of the Consolidation Act (Laws 1882, pp. 254, 255, c. 410), and of the first and eighth sections of article 3, c. 230, pp. 321, 324 of the Laws of 1843. The latter section was construed by the Court of Appeals in People ex rel. Morgenthau v. Cady, 105 N. Y. 299, 11 N. E. 810, which was a case quite similar to the one now before us, and in which it was sought to avoid a sale because contiguous lots belonging to the same owners, but assessed to different individuals, had been advertised in separate parcels. Judge Peckham, who delivered the opinion of the court, after quoting the section, said:

"We are of the opinion that the words 'belonging to the same owner,' in the above section, do not mean simply the technical owner of the title, but, as therein used, they mean the person in whose name as owner or occupant the lots are assessed. The assessment rolls are the only record the comptroller has before him from which to decide who is the owner, and in cases where

the land was assessed to the occupant * * * the comptroller would be without any evidence of ownership. It cannot be supposed that under such circumstances the statutes contemplated a search by the comptroller through the register's office. * * * For this purpose the person assessed must be assumed to be the owner."

The Morgenthau Case, it seems to me, is directly in point and decisive of the case now before us. The statutory provisions under which the lots were sold in that case, so far as requiring the owner's name to be stated, were substantially identical with section 1027, and while it is not so stated, and the precise point was apparently not raised, it is fairly to be inferred from the opinion that the names of the owners were not stated in advertising the lots, but only the names of the persons to whom they were assessed, and, if it had been necessary in advertising the lots to state the names of the owners, the question which was decided would not have arisen. No further search would have been necessary, and the comptroller would have known that the contiguous lots were owned by the same owners. In any event, the reasons assigned in that case are applicable to the present one, and if the word "owner" means the person to whom the property is assessed in the one section, for the same reason the same meaning should be given to "ownership of the property" in the preceding section.

Not only this, but, under the provisions of the Greater New York Charter and provisions of the statute existing prior to its adoption, taxes upon realty in the city of New York are assessed upon the property, and not upon the owner. The name of the owner or occupant is to be given if known (section 889), but a tax is not invalid because the name of the rightful owner is not inscribed in the assessment roll (section 894). The assessment is by lot and block numbers, and, when land is sold for unpaid taxes, it is no protection to the owner to have his name stated, as exemplified in the present case, for the method of identifying the land is by lot and block number. Such being the case, it cannot be that the Legislature intended that upon such sale the title to the property must be searched and the name of the real owner ascertained, with the result of rendering the sale invalid in case the real owner was not determined, as might well happen in many cases where the title was defective or doubtful.

For these reasons, I am of the opinion that the statute was sufficiently complied with, that the sale was valid, and that the motion for the writ was properly denied.

If these views be correct, then it follows that the order appealed from should be affirmed, with $10 costs and disbursements. All concur.