(161 App. Div. 469)

LANCASTER SEA BEACH IMPROVEMENT CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. March 20, 1914.)

1. MUNICIPAL CORPORATIONS (§ 977*)—TAXES—RECOVERY OF PAYMENT—EVI-
    DENCE.
    In a suit to recover taxes paid on the ground that the assessment was invalid, evidence *held* sufficient to show that a reduction of the assessment was passed upon by the board of taxes and assessments, and not by one commissioner only.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent.. Dig. §§ 2099–2103; Dec. Dig. § 977.*]

2. MUNICIPAL CORPORATIONS (§ 977*)—TAXES—RECOVERY OF PAYMENTS—BUR-
    DEN OF PROOF.
    A taxpayer, suing to recover a tax paid, on the ground that the assessment was invalid because reduced by one commissioner only, and not by the board of taxes and assessments, has the burden. of proof.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2099–2103; Dec. Dig. § 977.*]

3. TAXATION (§ 442*)—TAX RECORDS—PRESUMPTIONS.
    Where the formal tax record shows that a tax assessment was reduced by the board of taxes and assessments, the presumption against the contention that one commissioner only reduced the assessment, rendering it invalid, is very strong, and direct negative proof is called for.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 774–780; Dec. Dig. § 442.*]

4. STIPULATIONS (§ 14*)—CONSTRUCTION—DOCUMENTARY EVIDENCE—REDUC-
    TION.
    A stipulation, in a suit in which a tax assessment was attacked because reduced by one commissioner only, and not by the board of taxes and assessments, that the annual record prepared by the commissioners, showing under the column "Remarks" that the reduction was made "by Commrs.," was so written by the deputy commissioner, who reported the original tax, and, in favor of the reduction, was insufficient to show that the board did not pass upon the reduction.

    [Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 24–37; Dec. Dig. § 14.*]

5. MUNICIPAL CORPORATIONS (§ 972*)—TAXES—CHARTER PROVISIONS—OATH
    OF COMMISSIONER.
    Tax books constituting the annual record need not embody the oath of the deputy commissioner in assessing taxes required by New York Charter (Laws 1901, c. 466) § 889.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2075, 2078–2082; Dec. Dig. § 972.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. MUNICIPAL CORPORATIONS (§ 974*) — TAXES — REDUCTION OF ASSESSMENT — INTRODUCTION OF TESTIMONY.

Under New York Charter (Laws 1901, c. 466) § 898, a deputy commissioner, or the board of taxes and assessments, in reducing a tax assessment need not hear testimony as to the reduction, in the absence of a request of the applicant for the reduction.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2083–2086; Dec. Dig. § 974.*]

7. MUNICIPAL CORPORATIONS (§ 974*)—TAXES—REDUCTION—BOARD OF COMMISSIONERS—MINUTE BOOK.

The board of taxes and assessments need not keep a minute book to show its official action in passing on an application for a reduction of a tax assessment, as the record of the assessment roll and the annual record is sufficient.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2083–2086; Dec. Dig. § 974.*]

8. MUNICIPAL CORPORATIONS (§ 971*)—TAXES—RECORDS—FORM OF TAX ROLL.

Charter of New York (Laws 1901, c. 466) § 910, requires the placing of the sum in dollars and cents of the tax to be paid in the fifth column of the assessment roll. The general scheme of taxation prescribes that the first column must contain the name, the second the real property, the third the full value thereof, the fourth the full value of all taxable personal property, and fifth the tax. In the city of New York personal property taxes are separate from taxes on land, and placed on a different roll. *Held*, that a contention that a tax on property was void because placed in the fourth column, caused by the omission of the personal property column, was too technical to be considered.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2075–2077; Dec. Dig. § 971.*]

9. MUNICIPAL CORPORATIONS (§ 971*)—ASSESSMENT OF TAX—MAPS—PRESUMPTION.

In a suit attacking a tax assessment, in which a tax map made in conformity to New York Charter (Laws 1901, c. 466) §§ 890, 892, is introduced in evidence, which map bears date prior to Laws 1892, c. 542, applicable to the territory of Greater New York, and providing that maps shall be made, etc., it will be presumed, in the absence of contrary evidence, that the map in evidence was the only map made, and the one on which the tax was assessed, as Laws 1892, c. 542, does not require maps to be made forthwith, and there is implied permission, in section 4 of such law, to use maps in possession of the tax officer.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2075–2077; Dec. Dig. § 971.*]

10. TAXATION (§ 421*)—TAX RECORDS—DESCRIPTION OF PROPERTY.

Where the annual record and assessment roll gave the ward, block number, lot number, and relative location with respect to the streets stated, though not the name of the owner of an outlying parcel of land, never subdivided into city lots, but within the limits of New York City, and from which description the premises could be found by reference to the description in the tax map, the description was sufficient.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 720–727, 729–735; Dec. Dig. § 421.*]

Appeal from Trial Term, Queens County.

Action by the Lancaster Sea Beach Improvement Company against the City of New York. From a judgment dismissing the complaint on the merits, plaintiff appeals. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Argued before JENKS, P. J., and THOMAS, RICH, STAPLE-TON, and PUTNAM, JJ.

Edward M. Grout, of New York City (James F. McKinney, of New York City, on the brief), for appellant.

Curtis A. Peters, of New York City, for respondent.

JENKS, P. J. This action was begun in 1912, to recover the amount paid by the plaintiff to relieve its lands from an advertised sale therefor for the taxes for 1899. It was tried by the court without a jury. At the close of the case the plaintiff was dismissed on the merits, and appeals from the judgment. The contention of the plaintiff is that the tax was illegally imposed. As the result of the procedure now attacked by the plaintiff, the plaintiff substantially has but paid the tax, and the rule that governs the disposition of this kind of action is perhaps not as stringent as that which would have obtained if the plaintiff had been actually divested of the land by a tax sale. Matter of Adler & Co., 174 N. Y. 287, 66 N. E. 929; Matter of Veith, 165 N. Y. 204, 58 N. E. 886. I shall consider the several objections raised by the plaintiff.

[1] The land is situate in the Fifth ward of the borough of Queens of the city of New York. It is contended, first, that the reduction of the assessment was "passed upon" by only one commissioner, and not by the board of taxes and assessments, in Queens borough, not in Manhattan, all contrary to law, and that therefore such a reduced valuation was not a legal basis for the tax levied thereon. It appears that the land was originally assessed at $141,000. Thereupon the plaintiff filed written application to the commissioners for a reduction. Thereafter a deputy commissioner, who had been assigned to the impost, and who had reported the assessment at $141,000, reported to the board in writing that he had re-examined the property referred to in the application; that the assessment was high and out of proportion to surrounding property, and recommended a reduction to $120,000. The Annual Record (section 892, Greater New York Charter), under the column headed "Value of Real Estate" shows the figures "$141,-000"; under the column headed "Corrected Amount," "120,000," and under the column headed "Remarks," the words "By Commrs."; and the assessment roll (section 892, Id.) shows under the column headed "Value of Real Estate in Dollars," "$120,000." But to sustain its said contention the plaintiff called a commissioner of taxes and assessments, Mr. E. C. Sheehy, in reliance of the rule enunciated in Doughty v. Hope, 3 Denio, 594. Assuming that his testimony was competent in contradiction of the official records of the board of which he was a member, it is insufficient. On the said report, upon the application for reduction, there is a printed indorsement with blanks. A part of the indorsement is:

"New York, ——— 189—. The assessed valuation of the property referred to in this petition is hereby fixed at $———. Commissioners of Taxes and Assessments."

These blanks are not filled. Another part of that indorsement as filled reads:

"Assessed at $141,000.00 April 19 1899 120,000. G. W. C. R. A. H."

The importance attached to this indorsement by the plaintiff is in the fact that below the said words, "is hereby fixed at $————," and above the said words "Commissioners of Taxes and Assessments," are written the words "Report of deputy confirmed E. C. S."—and that Mr. Sheehy testifies that the said initials are his, were put there by him after the said words, "Report of deputy confirmed," were written, that he left the report remaining in the office in Queens, where it had been received, and that is the only place he ever saw it.  He 'further testifies that he did not know what happened to the document after it was filed in the Queens borough office.

"Q. Did you ever see it?  A. I signed it; yes.  Q. Don't you know what happened to that extent?  A. The usual course.  Q. What was done to it? Did it come to you?  *  *  *  A. No; certainly not."

The witness testifies that he did not have charge of the assessments in that borough, but of certain matters; that he called to the attention of the commissioners any matters that might occur; that he did not know what happened to this report after it was filed in that office; that he had no personal recollection of the application or anything contained therein; and that there were thousands of such applications there.  He further testified that the board of taxes and assessments had stated meetings and kept minutes; that he did not know whether this application was considered by the board in Manhattan; that he did not remember whether it was considered at any meeting when he was present; that the board was in session every day, and held weekly meetings, at which a majority was always present.

[2, 3] The burden of proof was with the plaintiff.  Cooley on Taxation, 816; Tingue v. Village of Port Chester, 101 N. Y. 294, 4 N. E. 625.  In the face of the formal records, the presumption against the contention of the plaintiff is very strong, and in the nature of things direct negative proof was called for.  Downing v. Rugar, 21 Wend. at page 184, 34 Am. Dec. 223, cited in Doughty v. Hope, supra.  The initialing by Mr. Sheehy and his testimony fall far short of establishing that he, in usurpation of the power of the board, acted alone in the reduction of the assessment, especially when we recall that he united with the other members in certificate of the assessment rolls, which contain the reduced figures of the assessment.  Section 907. That initialing was not necessarily contrary to, even less contradictory of, the fact that the reduction was made by the board itself; for it. indicates nothing more than a memorandum, perhaps of identification, or possibly that this commissioner in the first instance had examined or had approved the report of the deputy, which it must be remembered was addressed to the board itself.  When we consider that Mr. Sheehy's testimony was adduced in 1912 as to an isolated official act purporting to have been done by the board 13 years before, and are mindful of the many thousands of similar applications, it would seem strange indeed if the memory of any man could recall any of the particulars of this or any other particular application.

[4] The plaintiff also relies somewhat upon the fact that it was stipulated that upon the book of the Annual Record prepared by the commissioners the figures 141,000 were written in by the deputy "or

under his direction, and under his oversight, and that the words, under the column 'Remarks,' 'By Commrs.'" were made by said deputy "at the time of the entry of the figures in red ink '120,000' in the column 'Corrected Amount.'" The deputy himself was not called as a witness, and the reason stated by one of the counsel for the plaintiff is:

"Mr. Connelly is very ill, and we are going to get along without him."

Giving full value to the stipulation, it but appears that the deputy in charge of the assessment, who reported in favor of the reduction of the commissioners, made or supervised insertion of the purported action of the commissioners in an official record that showed a reduction by them, and made therein the writing of the statement that such action was taken by his superiors. For whatever this deputy did is not regarded as the act of an independent official, but as a subordinate of the commissioners, and hence the mere proof that he prepared or superintended the statement in a record of the action of the commissioners does not establish that he himself acted, or attempted to act, contrary to his duties, in violation of the statute and to the exclusion of his principals. People ex rel. Thomson v. Feitner, 168 N. Y. 441, 61 N. E. 763.

[5] A further contention of the plaintiff is met by the statement that there is no requirement of law that the provisions of section 889 shall be embodied in the tax books. People ex rel. Zollikoffer v. Feitner, 34 Misc. Rep. 299, 69 N. Y. Supp. 793, affirmed, 63 App. Div. 615, 72 N. Y. Supp. 1124; affirmed 168 N. Y. 674, 61 N. E. 1133.

[6] It was not essential that under section 898 the deputy commissioner should hear testimony as to the reduction, or that the board itself should so do, in the absence of any request on the part of the applicant. People ex rel. Sutphen v. Feitner, 27 Misc. Rep. 384, 58 N. Y. Supp. 869; affirmed 45 App. Div. 542, 61 N. Y. Supp. 432; People ex rel. Thomson v. Feitner, supra; People ex rel. Kendall v. Feitner, 168 N. Y. 660, 61 N. E. 1133. Indeed, it appears that its application for a reduction was granted upon the showing of its application and upon a re-examination of the premises.

[7] Nor do I deem it essential that the board should keep a minute book to show its official action in passing upon an application for reduction. It appears from the testimony of Mr. Sheehy that the only record of the official acts of the board appeared in the Annual Record and in the assessment roll. I think that such record is sufficient as to formality. It was not at all strange that as the only "minute book" produced recorded but the executive work of the board, it did not contain any entry of the official act of the board in determination of this amount. I think, then, that the contention that the assessment was not made by the commissioners cannot prevail. Authorities supra; Matter of Peek, 80 Hun, 122, 30 N. Y. Supp. 59; 37 Cyc. pp. 1276, 1279; Am. & Eng. Ency. of Law (2d Ed.) vol. 27, p. 728; Desty on Taxation, 615, 616; City of New York v. Vanderveer, 91 App. Div. at page 308, 86 N. Y. Supp. 659; Adams v. Osgood, 60 Neb. at page 782, 84 N. W. 257.

[8] Another contention of the plaintiff is that the commissioners of taxes and assessments did not prepare a fifth column in which to place

the tax required by law, and that the municipal assembly did not place the said tax in a fifth column, as prescribed by law. This contention rests upon section 910 of the charter. The required statement under the "fifth column" is the sum "in dollars and cents, to be paid as a tax thereon." As there is a column headed "Tax in Dolls. Cts.," which contains the amount of the tax, this contention rests upon the fact that such column cannot, by correct enumeration, be described as "fifth." The reason is obvious. The general scheme of taxation in the state prescribes that the first column must contain the name, the second the real property, third, the full value thereof, the fourth, the full value of all taxable personal property owned by such person after deducting the just debts, and the fifth the tax. But as in the city of New York personal taxes are separated from taxes on land, and are placed on a different roll (see Haight v. Mayor, etc., of City of N. Y., 99 N. Y. 280, 1 N. E. 883), the entry assigned to the fourth column would be useless in an assessment roll that relates to lands only. If that fourth column is eliminated, then the column headed "Tax in Dolls. Cts." as counted in its order would be fourth instead of fifth. To my mind, no such Chinese fidelity to the letter of the law is required as to provide a column necessarily blank, and that can serve no purpose whatever, in order that he who counts the columns may find that the tax is stated in a fifth column. This variation did not affect the impost. See Bennett v. Robinson, 42 App. Div. 412, 59 N. Y. Supp. 197; People ex rel. Mohawk & M. R. Co. v. Garmon, 63 App. Div. 530, 71 N. Y. Supp. 826.

[9] Still another contention of the plaintiff is that the Annual Record did not sufficiently describe the assessed premises according to law. The plaintiff asked the defendant to produce the tax map. The record shows that the defendant "produced the map requested," and that it was read in evidence. The entire map book was offered by the defendant, and, although the page that contained the premises had theretofore been offered by the plaintiff to show "the situs," the remarks of its counsel at the time of the offer of the defendant indicate that the plaintiff had offered this page itself in evidence as the map of the premises. It does not appear when this map was prepared. It is entitled "Department of Taxes and Assessments, Maps of the Borough of Queens, 5th Ward, Formerly Town of Hempstead, Volume 1, January 1899," and bears the signatures of the commissioners of taxes and assessments and of the secretary. These words "January 1899" are neither explained by the context nor by the evidence. They do not necessarily mean that the map, or at least its contents, were not in existence before that time and were not used before that time. On the other hand, this map seems to have been regarded by both parties as the map used in the matter of the assessment. I think that chapter 542 of the Laws of 1892 is applicable to the territory of the Greater New York (sections 1608, 1610, Charter). But, as I read its terms, they do not require that the maps therein contemplated must be prepared forthwith. They may be prepared so as to embrace the entire territory, and *when* this is done, *then* they supplant any map or maps used theretofore. There is no indication that the map in this case was

prepared in accord with the provisions of this statute and many indications to the contrary, both in the character of the map and in the absence of any certification or filing thereof. But section 890 of the Charter in part provides that the maps, etc., pertaining to the department of taxes and assessments of the municipality—

"of the department of assessment of the city of Brooklyn and of each and every of the like offices in any of the municipal and public corporations, or parts of municipal and public corporations consolidated by this act * * * shall be delivered into and thereafter be in the custody and control of the department of taxes and assessments hereby constituted, to be kept in such of the offices of the said department as may be most convenient to the taxpayers and suitable to the proper discharge of the business of such department, and shall be public records, and at all reasonable times open to public inspection."

And section 891 provides for the appointment of a surveyor to make necessary surveys and corrections of the ward maps, and also to make all new maps—

"which may be required for the more accurate assessment of real estate within the territory consolidated by this act with the municipal corporation known as the mayor, aldermen and commonalty of the city of New York."

I think that we may presume that the map read in evidence was a former map of the territory, not supplanted by any map prepared under the act of 1892, but used in conformity to the implied permission of section 4 of that statute and of said section 890, and adopted or prepared pursuant to the provisions of the said section 891.

[10] The Annual Record is described, "Annual Record of the Assessed Valuation of Real Estate in the Borough of Queens, The City of New York, Ward 5, Vol. 1 1899." The entry which concededly relates to the premises in question is headed, "Edgemere Ward 5, Volume 1, Block No. 10. Between Beach & Grandview Avenues. Between Atlantic Ocean & Edgemere Ave.," and in the several columns, "Owner or Occupant, unknown"; "Description of Property, Size of Lot, X 230"; "Ward No. 1, Street No. S. E. C." (in pencil), "Avenue Beach," "Value of Real Estate, $141,000," "Corrected Amount 120,000." Turning to the map which is described as "Volume I, Borough of Queens, 5th Ward," I find a separate tract, which is shown as a block, that contains the number 10 and also a small number 1, which lies between the Atlantic Ocean and Edgemere avenue and also between Beach and Grandview avenues, and on which are indicated the figures as of dimension 230. Mr. Rumsey in his chapter on Procedure in the City of New York, says:

"Each volume contains a certain number of blocks which are identified by reference to the maps. Assessments are entered in the proper volume, and can be found only by identification of the property upon the tax maps by its location, and reference thence to the books of record." Rumsey on Taxation, p. 67.

Thus we have the rem indicated in the Annual Record by block and lot numbers, and located in a particular ward, with the further identification of the various street boundaries, and similar data is afforded by the assessment roll. It appears that these premises are in an outlying part of the territory of the city adjacent to the Atlantic Ocean,

and constitute a tract 230 by 630 feet. It does appear that this land contained a hotel, cottages, and a stable. It does not appear that it was ever subdivided into city lots, or that there were any street numbers given to any of the property. It seems to me that the description was sufficient, and that those of the record and of the roll sufficiently conformed. He who consulted the description of the roll found the ward, the block number, the lot number, and the relative location with respect to the streets stated, and apparently was directed to the map with sufficient definiteness. The omission to name the owner was not a defect. Section 894, Greater New York Charter; People ex rel. Myers v. Moynahan, 130 App. Div. 46, 114 N. Y. Supp. 417; Haight v. Mayor, etc., of City of N. Y., supra. In the city of New York the assessment is by lot and block numbers. Haight v. Mayor, etc., of City of N. Y., supra; People ex rel. Myers v. Moynahan, supra; Rumsey on Taxation, 67, 68, and authorities cited; see, too, section 4, chapter 542 of the Laws of 1892, supra. In Cooley on Taxation (page 405) it is said:

"The purposes in describing the land are, first, that the owner may have information of the claim made upon him or his property; second, that the public, in case the tax is not paid, may be notified what land is to be offered for sale for the nonpayment; and, third, that the purchaser may be enabled to obtain a sufficient conveyance. If the description is sufficient for the first purpose, it will ordinarily be sufficient for the others also."

And again it is said (page 407):

"A more satisfactory rule would seem to be that 'the designation of the land will be sufficient if it afford the means of identification, and do not positively mislead the owner,' or be calculated to mislead him."

See, too, Kane v. City of Brooklyn, 114 N. Y. at page 594, 21 N. E. 1053. The plaintiff's witness Larcher, who was connected with the company, when shown the map, stated, when interrogated as to the block and lot numbers, that the premises were shown upon it, and testifies that the property "which you have identified on the tax map" is the property, and the plaintiff, when it applied for the reduction, showed:

"To the Commissioners of Taxes & Assessments. The undersigned represents that it is the owner of real estate known as No. ——— Beach Avenue in Volume I of the 5th Ward District of Rockaway Beach of the Borough of Queens of the City of New York, designated on the Tax Map as Lot No. 1 in Block No. 10. He finds that the same has been assessed on the Assessment Roll of 1899 at a valuation of $141,000."

The judgment is affirmed, with costs. All concur.