## Warfel, Exec., v. Smith et al.

*Frank B. Warfel*, for plaintiff.

*Morgan J. Sheedy* and *Robert C. Haberstroh*, for defendants.

PATTERSON, P. J., September 14, 1945.—Plaintiff, execution creditor, caused defendants' real estate to be sold upon a writ of lev. fa. issued to January term, 1945, no. 38. After due advertisement, as provided by law, the sheriff exposed the property described to sale at public vendue or outcry and sold the same to plaintiff on January 5, 1945. The record shows that the sheriff made return to the said writ as follows: "Now, January 8, 1945, Return day: I certify that in obedience to the within writ, after having given due and legal notice of the time and place of sale, by advertisements in the public newspaper and handbills put up on the property within described and in the most public places in my bailiwick, I did, on Friday, the 5th day of January, 1945, at ten o'clock A. M., expose the property within described to sale by public vendue or outcry and sold the same to Frank B. Warfel and Hollidaysburg Trust Company, Executors of the Estate of B. F. Warfel, deceased, being the highest and best bidder for the sum of $1,183.64; actual amount paid, $1,047.14. I appropriated said money as follows": (Distribution by the sheriff is included in the return.) On July 7, 1945, six months and two days after January 5, 1945, the day when the property was sold, plaintiff filed this petition under the Deficiency Judgments Act of July 16, 1941, P. L. 400. Defendants filed an answer denying the jurisdiction of the court for the reason that the petition for deficiency judgment was not presented within six months after the sale of the real property.

The question submitted to the court for disposition is to determine the date of the sale. The Deficiency Judgments Act is entitled:

"An Act To protect the debtors, obligors or guarantors of debts for which judgments are entered or may be entered, and owners of real property affected thereby, and others indirectly liable for the payment thereof, by prescribing the method of fixing the fair market value of such property sold on execution, and limiting the amount collectible thereafter on such judgments."

It is clear from reading the title and text of the act that it was made for the protection of debtors, obligors, or guarantors of debts as therein set forth. The act is explicit in fixing a limit of the time in which plaintiff or creditor may file his petition for the right to collect additional moneys on the judgment.

Plaintiff argues that the sheriff's sale was not a sale until title passed by acknowledgment or delivery of deed by the sheriff, citing Collins, to use, v. London Assurance Corp., 165 Pa. 298, which holds that a debtor is not entitled to possession with its advantages until the deed is acknowledged by the sheriff. In this same ruling the court refers to the sale as the day when the property is struck off by the sheriff. Plaintiff cites other authorities holding that title does not pass until the deed is acknowledged and delivered, and argues that the date of the sale is when title passes.

On the other hand defendants argue that the "sale" took place when it was exposed and knocked down to the purchaser by the sheriff, to wit, January 5, 1945, in accordance with the public and personal notice served by the sheriff, and that the date of acknowledgment of sheriff's deed has nothing to do with the period of six months from the date of sale as mentioned in the Deficiency Judgments Act.

Counsel for the parties agree that the question raised in this proceeding has not been specifically ruled upon by the appellate courts, with relation to the Deficiency Judgments Act. The legislature, by the Act of June 16, 1836, P. L. 755, secs. 62 and 63, 12 PS §§2443-2444,

and the Act of July 22, 1919, P. L. 1089, sec. 1, 45 PS §81, has enacted laws governing the method of advertisement and notice of sheriff's sales. These acts refer to the date of the sheriff's sale by expressly directing the sheriff concerning the advertisement and notices to be given before each sale.

The Act of 1836, supra, requires the sheriff "to give notice of such sale, and of the day and hour when, and the place where the same will be . . . which notice shall be given to the defendant, and one of the said papers or parchments, shall be fixed by the sheriff, or other officer, upon the premises, and the others of them in the most public places of the county or city, at least ten days before such sale".

This act definitely fixes the day when the property is exposed and knocked down by the sheriff as the day of sale. Likewise, the Act of 1919, supra, refers to the time of sale as the day when the property is exposed and sold at auction. These acts do not in any respect limit the time of sale to the date of the sheriff's return or acknowledgment or delivery of title to the property. The Act of April 16, 1845, P. L. 538, sec. 2, 12 PS §2442, provides ". . . All sales of real estate by sheriffs and coroners shall be made on or before the return day of the writs respectively, or within six days thereafter". See Rhodes v. Barnett, 196 Pa. 429, West Philadelphia Title & Trust Co., to use, v. King, 344 Pa. 604; Mengel v. New Tripoli National Bank, 156 Pa. Superior Ct. 434. It will be observed that the legislature in the aforesaid acts refers to the day of the sale as the day when the property is actually knocked down and sold by the auctioneer. The sheriff's advertisement of the sale also notified bidders that the purchase price was payable immediately when the property was knocked down by the auctioneer, to wit, January 5, 1945. The day of the auction when the property is struck down to the purchaser and the payment of the

purchase price are simultaneous and do not depend upon the return of the sheriff or the acknowledgment of the deed or delivery of titles: Negley et al. v. Stewart, 10 S. & R. 207; Smith v. Wilson, 152 Pa. 552; 7 Pa. Standard Prac. §204. If the purchaser fails to pay the purchase price on the day of the sale and a loss results thereby the defaulting purchaser becomes liable for such loss on resale of the property. This liability accrues to the sheriff after his term of office has expired: Dickson, Sheriff, v. McCartney, 226 Pa. 552. It is well settled that the title acquired at sheriff's sale relates back to the date of the sale, not the date of the sheriff's deed: Hoyt v. Koons, 19 Pa. 277; Hardenburg v. Beecher, 104 Pa. 20; Pennsylvania Schuylkill Valley Ry. Co. v. Cleary, 125 Pa. 442.

By analogy the same question has been decided in tax sales. It is the well-established rule that the period of redemption of land from tax sales dates from the date when the property is actually struck down by the treasurer, and it does not run from the date on which the treasurer publicly appears and acknowledges and delivers the deed. In the case of Brew v. Sharer, 42 Pa. Superior Ct. 89, it was held that the two-year limitation for exercising the right of redemption for land sold at treasurer's sale June 13, 1898, expired June 13, 1900. In other jurisdictions it has been held that the "date of sale", as used in a statute requiring all actions to redeem land from tax sale to be made within five years from the date of sale, means the date on which the land is sold, and does not mean the date on which possession is taken under such sale: Mitchell et ux. v. Etter et al., 22 Ark. 178, 181; Hiltscher v. Jones, 23 N. M. 674. The New Mexico case, construing the act authorizing redemption from tax sales at any time within three years from the date of such sale, holds that the date the property is struck off to the county is the date of the sale and the tax sale certificate thereafter issued is only written evidence that the sale

has taken place. This case cites a number of cases from other jurisdictions, including The People ex rel. v. Cady, 105 N. Y. 299, 11 N. E. 810; Otoe County v. Brown, 16 Neb. 394, 20 N. W. 274; Pentecost et al., Admrs., v. Stiles, 5 Okla. 500, 49 P. 921; Boyd v. Wilson et al., 86 Ga. 379, 12 S. E. 744, and Pearson v. Robinson et al., 44 Iowa 413. In the Iowa case the court held that the three-year limit for redemption from the sale began to run from the day when the property was struck down by the treasurer, stating (p. 416) :

"When a statute creates a right, and prescribes the time and manner of exercising it, an inhibition is implied upon exercising it in another manner and time. The case of a sale upon execution is analogous. Real property sold upon execution without appraisement, may be redeemed within one year from the date of sale. It has never been claimed that this time would be extended by the failure to take a deed": Hiltscher v. Jones, 23 N. M. 674 (1917), 170 P. 884, 886.

In discussing the Deficiency Judgment Act of July 16, 1941, P. L. 400, while not directly deciding this particular phase of the case, the Supreme Court, in an opinion by Mr. Justice Linn, said (p. 635) :

". . . if a plaintiff desires to hold a defendant for anything more than was realized at the sheriff's sale, he must, within six months, file a petition to have the fair value fixed and credited on the judgment debt . . .": Pennsylvania Company, etc., v. Harrison et al., 349 Pa. 632.

Under this decision, if plaintiff desires to obtain a deficiency judgment "he must, within six months, file a petition . . ." The burden is upon plaintiff to act within the limit fixed by the law, as soon as he knows the facts. The law was enacted for the benefit of debtors. In this case plaintiff, being the execution creditor, knew all the facts and the amount to be realized from the sale on January 5, 1945, when the property

was sold by the sheriff on the writ issued by plaintiff. He also knew that the law required him to file a petition within six months from the date of sale, which, according to the sheriff's advertisement and return, was held on January 5, 1945. If, as plaintiff contends, the date of the sale depends upon the acknowledgment and delivery of title by the sheriff, then it would be possible for plaintiff or other interested parties, through exceptions or other dilatory proceedings, to postpone the filing of the petition and defeat the purpose of the law. If the legislature, in enacting the Deficiency Judgments Act in 1941, had intended the date of the acknowledgment and delivery of the deed as the date of sale, from which the six-month period should run, then it could easily have so provided.

Under all the facts and the law in this case the court is of the opinion that the "sale" of any real property under the Deficiency Judgments Act of July 16, 1941, P. L. 400, means the day and date when the property was knocked down by the auctioneer, to wit, in this case January 5, 1945, and that the limitation of six months began to run from that date.

Therefore, the court sustains defendants' motion to dismiss the petition, and further directs that defendants be released from further liability and responsibility thereunder.

### Decree

Now, September 14, 1945, the petition filed by plaintiff for deficiency judgment is hereby dismissed. And it appearing that no petition was filed by plaintiff or plaintiffs within such period (within six months from the date of the sale), the debtors, obligors, guarantors, and any other person liable, directly or indirectly, to plaintiff for the payment of debts shall be released and discharged of such liability to plaintiff or plaintiffs by virtue of the judgment upon which the writ of lev. fa. was issued to January term, 1945, no. 38.